Caroline F. McWethy *et al.*

*v.*

The Aurora Electric Light and Power Company.

*Opinion filed April 24, 1903.*

1. STREETS AND ALLEYS—*act of 1897, concerning lighting of streets, is not retroactive.* The act of 1897, (Laws of 1897, p. 100,) prohibiting any ordinance authorizing the erection of electric light appliances in the streets except upon a petition of property owners, and authorizing property owners to enjoin such use of the street if not petitioned for, does not apply to previously granted privileges.

2. SAME—*right of municipal corporation to authorize erection of electric light appliances in street.* A municipal corporation owning the fee of a street may lawfully authorize private corporations or individuals to place poles and wires in the street to provide lights for its own use and the use of its inhabitants, provided they do not materially obstruct the ordinary use of the street for travel.

3. INJUNCTION—*when abutting owner cannot enjoin use of street.* The devotion of a street, the fee of which is in the municipality, to a new use not inconsistent with public travel, does not entitle an abutting owner to an injunction unless he can show irreparable and special damages different in character from those suffered by other property owners or the public at large.

4. SAME—*whether use of street was legally authorized does not concern abutting owner.* An abutting owner is not entitled to enjoin a use of a street, the fee of which is in the municipal corporation, upon the ground that such use was not legally authorized, since that question can be raised only by the municipality.

5. ORDINANCES—*effect where donee of power was not in existence when ordinance is passed.* That a corporation to which is granted the right to erect electric light poles and wires in the streets of a city

was not organized when the ordinance was passed is an irregularity which may be waived by the parties, and cannot be availed of by an owner of abutting property as ground for enjoining the use of the street by the corporation.

6. SAME—*provision for obtaining a permit may be waived by the city.* Strict compliance with a provision of an ordinance requiring an electric light company to obtain a certain permit before beginning work may be waived by the city, and is a matter concerning which abutting owners have no right to complain.

*Aurora Light and Power Co.* v. *McWethy,* 104 Ill. App. 479, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. HENRY B. WILLIS, Judge, presiding.

This is a bill in chancery filed in the circuit court of Kane county by appellants, against appellee, for an injunction. It is alleged by the complainants that they are owners of property abutting on North Lake street, in the city of Aurora, and as such have the right to use and enjoy the said street clear of obstructions; that the defendant, through its officers and agents, is engaged in tearing up, excavating and erecting obstructions and poles upon said street, to the irreparable damage and injury to them and each of them, claiming the right to do so under and by virtue of the terms and conditions of an alleged ordinance of said city of Aurora. The bill then sets out an ordinance passed by the city council, approved January 16, 1888, the first section of which authorizes the Aurora Electric Light and Power Company to "lay and maintain its system of electrical conductors above and under the ground in the streets, alleys, etc., of the city of Aurora," with certain restrictions and limitations. The second section provides that "before beginning the erection of any line or lines of electrical conductors under this ordinance, a permit shall be first obtained from the superintendent of streets and the superintendent of electrical apparatus, by and with the concurrence of the committee on streets and alleys, spe-

cifying the location of said line or lines and the streets and alleys along which they may run." It further alleges that said ordinance is void because it was passed by the city council on the same night it was introduced, "contrary to a general ordinance of the city" requiring all ordinances to lay over at least one week before final action should be taken thereon, because it does not fix any duration of time for the exercise of the rights and privileges granted by it, and because no permit had been granted to the defendant to erect poles on said street by the superintendent of streets and the superintendent of electrical apparatus of the city.

Appellee first demurred to the bill, but its demurrer being overruled, it filed its answer admitting the passage of the ordinance of January 16, 1888, as alleged in the bill, but denying that there was any general ordinance of the city in force at that time requiring all ordinances to lay over at least one week before final action thereon. It denied that the failure of the ordinance to limit the time of the duration of the rights and privileges granted by it rendered it void. It neither admitted nor denied the allegations of the bill as to its having a permit from the superintendent of streets and the superintendent of electrical apparatus to place poles in said street, but claimed, by its answer, the same advantage as though it had demurred or pleaded to the complainants' bill.

The bill was filed June 26, 1900, and on September 10 the complainants asked leave to amend the same, and submitted the amendment which they desired to file, charging, in addition to the matters above mentioned, that at the time said ordinance was passed the defendant company was not organized and had no legal existence and no power or authority to accept or receive the grant of power given it by the ordinance; that leave was denied, and renewed on October 30, but again refused. The cause was referred to the master in chancery to take and report the evidence, with his conclusions. By his re-

port he recommended that a decree be rendered as prayed in the bill, and that report was approved and a decree rendered accordingly. On appeal to the Appellate Court for the Second District the decree was reversed and the cause remanded to the circuit court, with directions to dismiss the bill. Complainants below now prosecute this. appeal and assign for error said judgment.

Albert J. Hopkins, Fred A. Dolph, Robert Bruce Scott, and David J. Peffers, for appellants:

Appellants, as abutting owners, have the right to enjoin a construction and a use of the street for purely private commercial purposes as distinguished from a construction or a use of the street to facilitate public travel, such as for street railways, hacks, steam railroads, etc.; and especially is this so in view of the provisions of an act to prescribe the conditions, etc., for lighting and heating purposes by cities, etc., and providing a remedy for the property owner, etc. Hurd's Stat. 1899, chap. 24, sec. 491.

A remedial statute must receive a liberal construction, and be made to apply to all cases it can be made to reach. *Kotz* v. *Belz*, 178 Ill. 442.

In the following cases ordinances were held void and injunctions made perpetual at the suit of abutting owners, restraining the construction of structures in a street which did not facilitate street travel: *Smith* v. *McDowell*, 148 Ill. 51; *Huesing* v. *Rock Island*, 128 id. 465; *Field* v. *Barling*, 149 id. 556.

The remedy by injunction is the most efficient means of preventing obstructions to public highways, and where the facts are easy of ascertainment and the rights resulting therefrom are free from doubt, the relief will be granted at the suit of a citizen having a special interest in the matter. High on Injunctions, secs. 816, 9, 520.

Where a party has a right of way over and an easement in real estate, and the same is obstructed, equity

has jurisdiction, as the injured party has no adequate remedy at law. Moreover, the injury complained of is one of a continuing or permanent nature, for which an action at law would not afford a complete and adequate remedy. *Carpenter* v. *Capital Electric Co.* 178 Ill. 29.

An ordinance purporting to grant rights to a corporation is not valid where the corporation was not in existence at the date of the grant. *Loverin* v. *McLaughlin*, 161 Ill. 417; *Edwards* v. *Armour Packing Co.* 190 id. 467; *Ricker* v. *Larkin*, 27 Ill. App. 632; *Cresswell* v. *Oberly*, 17 id. 281.

Murphy & Alschuler, for appellee:

An ordinance granting a franchise to a private corporation to construct an improvement in the streets of a city is a mere license, revocable at the pleasure of the city, until accepted and acted upon by such private corporation. When accepted by such private corporation, or acted upon by such private corporation by the construction of the improvement mentioned in the ordinance, then the matter ripens into a valid and binding contract between said city and such private corporation, and can not be revoked by either party to such contract without the consent of the other. Either the city or such private corporation, being parties to said contract, may waive any of the terms or conditions of such contract. An abutting property owner along the line of the proposed improvement provided for by said ordinance is not a party to such contract and cannot take advantage of the invalidity of the same, and cannot object to the nonperformance or the waiving by either of said parties to such contract of any of the terms or conditions of the same. *Quincy* v. *Bull*, 106 Ill. 337; *People* v. *Telephone Co.* 192 id. 307; *Belleville* v. *Railway Co.* 152 id. 171; *Railway Co.* v. *Railway Co.* 186 id. 219; *Chicago Telephone Co.* v. *Telephone Co.* 199 id. 324; *Rapid Transit Co.* v. *Trust Co.* 90 Ill. App. 460; *Railway Co.* v. *People*, 73 Ill. 541; *Light Co.* v. *Town of Lake*, 130 id. 42; Starr & Cur. Stat. chap. 24, sec. 24.

If an ordinance is passed granting a franchise to a corporation not yet organized, such franchise, at the time of its passage, is a mere license, and may be revoked at will by the city. By acceptance of the franchise after the corporation becomes fully organized, the contract relation is established between the city and such corporation as fully and completely as though such corporation were fully organized at the time of the passage of the ordinance. *Chicago Telephone Co.* v. *Telephone Co.* 199 Ill. 324; *People* v. *Telephone Co.* 192 id. 307; *Lauder* v. *Trotting Society*, 71 Ill. App. 475.

The validity of a charter, permit or franchise cannot be attacked collaterally, but must be tested in a direct proceeding of *quo warranto*, *scire facias* or injunction, instituted for or on behalf of the people or the city, for the sole purpose of testing the validity of such charter, permit or franchise. *Chicago Telephone Co.* v. *Telephone Co.* 199 Ill. 324; *Thompson* v. *Candor*, 60 id. 244; *Bushnell* v. *Ice Machine Co.* 138 id. 67; *Lees* v. *Drainage Comrs.* 125 id. 47; *Osborne* v. *People*, 103 id. 224; *Rice* v. *Railroad Co.* 21 id. 93; *Goodrich* v. *Reynolds*, 31 id. 490; *State* v. *Egg Harbor City*, 26 Atl. Rep. 89; *Baker* v. *Backus*, 32 Ill. 79; *Williams* v. *Bank*, 1 Gilm. 667; *Renwick* v. *Hall*, 84 Ill. 162; *Forest Glen Brick Co.* v. *Gade*, 55 Ill. App. 181; Rev. Stat. chap. 112, sec. 1.

Mr. Justice Wilkin delivered the opinion of the court:

Complainants' cause, as presented by their counsel, rests upon the following propositions: First, "appellants, as abutting property owners, have the right to enjoin a construction and a use of the street for purely private commercial purposes as distinguished from a construction or a use of the street to facilitate public travel, such as for street railways, hacks, steam railroads, etc., and especially is this so in view of the provisions of an act entitled 'An act to prescribe the conditions, etc., for lighting and heating purposes by cities, etc., and providing a remedy for the property owner,' etc.;" second, "an

ordinance purporting to grant rights to a corporation is not valid where the corporation was not in existence at the date of the grant;" third, "an ordinance is void which was both presented and passed at the same meeting of the city council, where there is in force a rule of the city council providing that all ordinances shall lie over for one week after being presented and read;" and fourth, "where a grant to a corporation provides that before beginning work on any street it shall have a permit therefor from the city electrician and the superintendent of streets, by and with the concurrence of the streets and alleys committee of the city, the corporation cannot lawfully commence such construction without such permit."

The maintenance of the first of these propositions is essential to the right to maintain this bill and upon which the correctness of the decision below must turn. The statute therein referred to is an act in force July 1, 1897, consisting of a single section. (Hurd's Stat. 1899, chap. 24, par. 491, p. 358.) That section, after providing that the city council or the president and board of trustees of villages and incorporated towns shall have no power to pass an ordinance granting certain privileges except upon the petition of the owner of the lands representing more than one-half of the frontage on the street or alley, etc., provides: "Any person being the owner of or interested in any lot fronting on any street or alley, or part thereof, as is sought to be used for any or either of such purposes, shall have the right by bill in chancery, in his or their own name, to enjoin any person or corporation from using such street or alley, or part of street or alley for either of such purposes, under any grant by the city council or board of trustees, which is not made in conformity with the provisions hereof, and the sufficiency of the petition herein required shall be ascertained by the court in which such bill in chancery may be filed."

It will be seen that this statute does not purport to authorize abutting property owners, generally, to main-

tain bills in chancery to restrain the creation of obstructions in public streets, but simply provides a remedy for a violation of the provisions of that act. This bill shows on its face that the defendant was not claiming the right to place the alleged obstruction in the street under an ordinance passed since that enactment. We are unable to perceive upon what principle the complainants can invoke that statute as authorizing them to bring the present bill. The section must be considered as a whole, and, so construed, the provision relied upon can have no application to privileges granted before its adoption.

It is assumed in the first of the above propositions that placing in a public street poles upon which to string electric wires for lighting purposes is for a purely private commercial purpose, distinguishable from the building of street and steam railroads, the use of hacks, etc. That it is a different use is true, but that it is, in principle, distinguishable from the other obstructions mentioned or that it is for purely private commercial purposes is not true, as shown by this record. The poles were not being placed in the street for private commercial purposes alone, but were intended to serve the same purpose as lamp-posts or other means of conducting light to the streets and inhabitants of the city residing thereon, which are public and proper uses. (*Barrows* v. *City of Sycamore*, 150 Ill. 588.) That the company would derive gain from their use in no way distinguishes them from street railways or other means of public travel. In all such uses private gain accrues to the individual or corporation operating them. Since the discovery and use of electricity for lighting purposes it has generally, if not universally, been held that, the fee to public streets being in a municipality with general power to regulate the use of the same, such municipality may lawfully authorize private corporations or individuals to erect electric light poles on its streets and stretch wires upon them in order to provide lights for its own

use and that of its citizens, provided that in doing so they do not materially obstruct the ordinary use of the streets for public travel. This right is fully recognized in *Chicago Tel. Co.* v. *Northwestern Tel. Co.* 199 Ill. 324. In *State* v. *Murphy*, 134 Mo. 548, the Supreme Court of that State uses the following clear and comprehensive language: "The power to regulate the use of streets is very comprehensive. 'The word *regulate* is one of very broad import.' * * * Under the power thus delegated it can not now be questioned that the municipal authorities can permit the use of the surface of the street for the erection of telegraph and telephone poles and the laying of railroad tracks, the space above the surface for stringing electric wires, for the transmission of messages and the creation of light, and may also permit the laying of water and gas pipes and sewers beneath the surface. * * * These uses are all of a public nature, and are not inconsistent with the public use to which the streets were dedicated. Under its general power to regulate the use of streets the city has authority to authorize corporations and persons, for the purpose of serving the public, to string telegraph, telephone or electric wires upon poles above the surface of the streets, provided such construction and mechanical appliances do not materially interfere with the ordinary uses of the streets and public travel thereof."

Where the fee to a street or highway is in the abutting owner a different rule obtains. In *Board of Trade Tel. Co.* v. *Barnett*, 107 Ill. 507, we held that the erection of telegraph poles along a public highway in the country was inconsistent with the proper use of it, the fee remaining in the abutting property owner, but distinguished the case from those in which the fee is in the municipality. (See, also, *Indianapolis, Bloomington and Western Railroad Co.* v. *Hartley*, 67 Ill. 439.) We have often held that where a public street, the fee to which is in the municipality, is devoted to a new use not inconsistent with

the public travel upon it as a street, a court of equity will not entertain a bill by abutting property holders to enjoin such new use, except in cases where the complainant alleges and proves that he has sustained special and irreparable damages different in kind and character from those sustained by other property owners or the public generally. This rule, with the qualification, is fully recognized in *Smith* v. *McDowell*, 148 Ill. 51, *Field* v. *Barling*, 149 id. 556, and other cases cited and relied upon by counsel for appellants, in which special and irreparable damages were shown. *Huesing* v. *City of Rock Island*, 128 Ill. 465, also cited by counsel for appellants, does not hold a different doctrine. That case seems to have no application whatever to the one at bar.

Nor does the right of an abutting property holder to maintain a bill for injunction in such cases depend upon the question whether or not the new use of the street has been legally authorized by the municipality. In *Doane* v. *Lake Street Elevated Railroad Co.* 165 Ill. 510, we said (p. 522): "The principle is, that, the abutting property owner having a complete remedy at law, a court of equity will not, upon his allegation that the ordinance authorizing the construction is illegal, enjoin the defendant from proceeding until the question of illegality can be litigated and determined, but will remit him to his action at law; and this, it seems to us, is a just and reasonable rule, the enforcement of which will protect the rights of all parties interested." And in the later case of *General Electric Railway Co.* v. *Chicago and Western Indiana Railroad Co.* 184 Ill. 588, we again said (p. 594): "The allegations of an abutting property owner that the construction and operation of a street railway in front of his property will lessen its value or injuriously affect it, or the allegation that the construction of a street railway in the street is illegal or unauthorized, will not give such abutting property owner a standing in a court of equity to enjoin the construction of such road,"—citing

many cases. And again, in the case of *Chicago Tel. Co.* v. *Northwestern Tel. Co. supra*, we used this language (p. 347): "It is also to be observed that an obstruction in the nature of a public improvement placed in the streets of a city by the permission of the city, either express or implied, is strictly a matter between the city and the private corporation constructing the improvement, so that any action to test the right to so obstruct the street should be brought by the city or by some public officer on behalf of the city,"—also citing authorities. And we also there said (p. 364): "The fee of the streets is in the city. Cities are given exclusive control over the streets and alleys within their corporate limits. It follows, as a general rule, that a court of equity will not interfere with the city's control over the use of its streets unless the exercise of such power by the city is abused to the oppression of persons or corporations having rights in the street, or unless the action of the city in such respect is fraudulent or grossly wrong and unjust." The reason upon which this doctrine rests is so apparent and has been so frequently pointed out by this and other courts, that to repeat it now is wholly unnecessary.

The first proposition cannot be sustained, and it must follow, without reference to the merits of the others, the judgment of the court below must be affirmed. Even if those objections could be sustained, the ordinance under which the appellee was proceeding would be but an illegal or irregular grant of power, which would furnish no grounds for the interposition of a court of equity at the suit of private individuals. The second, third and fourth points made by counsel for appellants may, however, be briefly disposed of.

Conceding that the second,—that is, that an ordinance purporting to grant rights to a corporation not in existence at the time of the grant is invalid,—is properly presented by the bill and answer and sustained by the facts, it is not correct as a matter of law. The ordinance, when

passed by the city council, was a mere license or offer to grant a license to the company, and only became a binding contract between the city and the company when the latter accepted it.   (*People ex rel.* v. *Central Union Tel. Co.* 192 Ill. 307, and cases there cited.)   The case is not different, in principle, from that of *Richelieu Hotel Co.* v. *Military Encampment Co.* 140 Ill. 248.   It is said by counsel for the appellants that the appellee corporation was not thought of at the time the ordinance was adopted.   It is singular that an ordinance should have been adopted granting a franchise to the appellee, by its correct corporate name, at a time when such a corporation was not even contemplated.   The most that can be said as to the validity of the ordinance because the donee of the power was not in existence at the time would be, that the proceeding by the city council was premature and irregular. But that irregularity might be waived by the parties, and could not be questioned by an abutting property holder not a party to the contract, even though he could maintain the action.   *Chicago Tel. Co.* v. *Northwestern Tel. Co. supra.*

The third objection,—that the ordinance was both presented and passed at the same meeting of the city council, in violation of a rule of the city requiring all ordinances to lie over one week after being presented,— is not sustained by the proofs.   The ordinance of January 16, 1888, was, in fact, passed at the same meeting at which it was presented, but the evidence fails to show that there was at that time an ordinance or rule of the city council in force requiring all ordinances to lie over for one week.   There was a resolution to that effect adopted at the time of the first city organization, in 1857, but that rule was abolished or repealed in September, 1884, and not until a year and a half after that, when the city ordinances were revised, was such an ordinance or rule re-enacted.

We are of the opinion that a permit to place poles in North Lake street had not been obtained from the city

electrician and superintendent of streets before beginning the erection of poles thereon sought to be enjoined, within the meaning of section 2 of the ordinance. It does appear that about the time of the adoption of the ordinance such permission was granted. This is shown by the testimony of William George, Wynn Meredith and Edward S. Frazier, who first organized the appellee company. It also appears that about that time a line was erected on this street, but the poles had been removed in 1894 or 1895. The proper construction of section 2 of the ordinance is, that within a reasonable time before beginning the erection of any line on any street or alley permission should be obtained, and we do not think such permission granted in 1888 would justify the erection of poles along a street in 1900. It will be seen, however, that said section 2 does not prescribe the manner of obtaining permission. It may be by parol or in writing, and where work is begun upon a street the presumption would be that consent had been given by the proper authorities of the city. It also appears that on the next. day after the bill was filed a written permit was given to erect the line on North Lake street. Of course, that permission could not relate back to the bringing of the suit, but it shows that the city expressly waived that requirement of the ordinance. As we have already said in passing upon the second proposition, that was a question between the city and the company, to which abutting property holders were not parties, and a strict compliance with it could undoubtedly be waived by the city. Certainly, with that written permit before the court a perpetual injunction could not properly be decreed.

The judgment of the Appellate Court is right and will be affirmed.                        *Judgment affirmed.*