THE CITY OF CHICAGO, Defendant in Error, *vs.* FRED KLUEVER, Plaintiff in Error.

*Opinion filed February 20, 1913.*

1. MUNICIPAL CORPORATIONS—*authority to pass ordinance must be found in charter.* A municipal corporation possesses such legislative power, only, as has been delegated to it by the legislature, and the authority to pass a particular ordinance must be found in its charter.

2. SAME—*city has power to pass all necessary police ordinances.* Clause 66 of section 1 of article 5 of the Cities and Villages act, authorizing a city to make and enforce all necessary police ordinances, is a grant of police power to the city, which authorizes it to make and enforce all reasonable police regulations for the protection of the public health and safety, which come within the range of the subjects over which the city has been given control. (*City of Chicago v. M. & M. Hotel Co.* 248 Ill. 264, explained.)

3. SAME—*a city has power to provide for the examination and licensing of drivers of automobiles for hire.* Under its power to regulate the use of the streets and pass and enforce all necessary police regulations a city may require drivers of automobiles used in transporting persons or property for hire to be examined and licensed by the city, notwithstanding such drivers have licenses granted by the State under the Motor Vehicle law of 1911, as the proviso to section 12 of said law expressly reserves such power to the city.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. SHERIDAN E. FRY, Judge, presiding.

ZIMMERMAN & MYERS, EDWARD A. ZIMMERMAN, and ABRAM L. MYERS, for plaintiff in error.

WILLIAM H. SEXTON, Corporation Counsel, and JAMES S. McINERNEY, (EDWIN J. RABER, of counsel,) for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Fred Kluever, the plaintiff in error, was charged in the municipal court of Chicago with violating section 2696 of the code of ordinances of 1911 of said city, requiring operators of motor vehicles engaged in the transportation of passengers, merchandise or any other purpose for hire or reward to be duly examined and licensed, and upon a trial by the court was found guilty. The court imposed a fine of five dollars and costs, and certified that the validity of the ordinance was involved and the public interest required that the question should be decided by this court. In pursuance of that certificate a writ of error was sued out to bring the record here for review.

Section 2696 is as follows: "No motor vehicle engaged in the transportation of passengers, merchandise or any other purpose for hire or reward shall be propelled or driven upon or along any street, alley or public way in the city of Chicago unless the person in charge of such vehicle who is acting as operator thereof, (such person being herein referred to as 'operator,') and as such operator controls the means of propulsion of any vehicle, shall be a person duly examined in the manner hereinafter provided and found competent and qualified to operate or drive such vehicle through the city streets without endangering the public safety, and duly licensed as provided for herein."

The defendant, who had no license from the city, was arrested while operating an automobile and carrying a passenger in a public street of the city, and the validity of the ordinance was the only matter in dispute at the trial. The defendant was an operator of automobiles licensed by the Secretary of State and employed as a chauffeur by the Un-

ion Club Livery Company, a corporation operating a garage in Chicago. He did not solicit customers or business on the street nor occupy a public stand. The livery company owns and maintains a garage at 944 North Clark street under a license granted to it by the city for carrying passengers for hire and uses the streets for the purpose of transporting passengers. It retains the right to let its automobiles to whomsoever it desires, and does not claim to hold itself out as a common carrier.

The legislative power is vested in the General Assembly, which may delegate so much as may be deemed proper to municipal corporations for the regulation of local affairs. As a municipal corporation possesses only such legislative power as is so delegated, the authority to pass ordinances must be found in its charter. The inquiry then is whether there is in the charter of the city of Chicago any delegation of power to provide that a person in charge of a motor vehicle, and acting as operator thereof in the transportation of passengers or merchandise, shall be a person competent and qualified to operate or drive such vehicle through the city streets without endangering the public safety. If there is such power, an examination for the purpose of ascertaining competency and qualifications, and a license, are proper methods of exercising the power. It is argued that there is no such power, and especially that under the stipulation of fact the livery company was not a common carrier, and therefore did not come within the forty-second clause of section 1 of article 5 of the charter, which authorizes the city council "to license, tax and regulate hackmen, draymen, omnibus drivers, carters, cabmen, porters, expressmen, and all others pursuing like occupations."

Counsel regard the decision in *Farwell* v. *City of Chicago,* 71 Ill. 269, as settling the question that the livery company was not a common carrier. It that case defendants were wholesale merchants, who kept and used wagons for the purpose of transporting goods sold by them to the

depot or wharf for shipment, and they charged cartage to the purchasers. They were held not to be within the letter or spirit of the forty-second clause. But their business was not of the same nature as that of the livery company. Cases where teaming was done with trucks and wagons under time contracts for hauling goods for wholesale firms of course have no relation to the proposition contended for. The question, however, whether the livery company was a public or common carrier is of no importance in this case if there are other provisions of the charter authorizing the enactment of the ordinance, and as it seems clear that there are such other provisions, the question whether the livery company was a common carrier is not decided.

The seventh clause of section 1 above mentioned empowers the city council "to lay out, to establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds, and vacate the same," and the ninth clause gives power "to regulate the use of the same." These are sweeping provisions intended to give very extensive control over streets, and the sixty-sixth clause gives the city council power "to regulate the police of the city or village, and pass and enforce all necessary police ordinances." It is true that the sixty-sixth clause was not intended to delegate to municipalities the entire police power of the State and that their powers are confined within the general scope of municipal functions and the subjects enumerated in their charters. The decision in *City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264, was based on that ground; but if a regulation referable to the police power falls within the range of the subjects over which control has been given to a municipality it is within the delegated power.

In *Spiegler* v. *City of Chicago,* 216 Ill. 114, the validity of an ordinance requiring a license for tank wagons using the streets, and prohibiting such use unless the wagons were equipped with drip-pans or other suitable device

for the purpose of preventing the spilling of oils upon the pavement, was disputed. The ordinance was sustained, and it was held that the city derived power to enact it from various clauses of section 1, including the authority to regulate the use of streets and to pass and enforce all necessary police ordinances, and as to the word "necessary" the court said that "indispensable" was not intended thereby, "but power was conferred upon the city to pass all ordinances which would be conducive to the promotion of the health, safety and welfare of its inhabitants." As to the police power, the court quoted from *Price* v. *People*, 193 Ill. 114, that it is an attribute of the sovereign power to enact laws for the exercise of such restraint and control over the citizen and his occupation as may be necessary to promote the health, safety and welfare of society. It would be quite strange if the legislature intended to confer upon cities the power to prevent the spilling of oil on a pavement but did not intend that it should have power to protect its citizens on the public streets from death or injury.

Municipal corporations in this State have always exercised the police power by making regulations necessary for the protection of the safety, health and morals of society, and every ordinance for that purpose which has been found reasonable and not in violation of any constitutional restriction has been sustained as strictly within the legitimate exercise of the power. In *McPherson* v. *Village of Chebanse*, 114 Ill. 46, the village ordinance prohibiting the keeping open of places of business on Sunday for the sale of goods, wares and merchandise was in question, and clause 66, giving power to regulate the police of the village and to pass necessary police ordinances, was construed. It was contended that the clause only referred to the organization and regulation of the police force, but the court said that such a construction was too narrow, and that the authority extended to and embraced the subject matter of police regulation under the general police power of the

State. There was no special provision of the charter authorizing such an ordinance in express terms, but it was held that the ordinance was within the police power because the observance of Sunday was promotive of good habits, tended to improve the manners of men and was civilizing and refining in its influence, and the keeping open of places of business was obstructive of the purposes for which the day was set apart and openly interfered with the peace and quiet of the day.

In *Culver* v. *City of Streator,* 130 Ill. 238, the court, in holding the city exempt from liability for the enforcement of a police regulation, said that the police power comprehends the making and enforcement of all such laws, ordinances and regulations as pertain to the comfort, safety, health, convenience, good order and welfare of the public. The most important of the police powers is that of caring for the safety and health of the community. It was so held by this court in *Gundling* v. *City of Chicago,* 176 Ill. 340, where the court passed upon an ordinance providing for a license fee of $100 per year for the sale of cigarettes and prohibiting any license to sell within two hundred feet of a school house. There was no express authority given in the charter for regulating or licensing the sale of cigarettes, and the claim of the appellant that no express power was given was sustained, but the court held that clause 66, authorizing the adoption of ordinances necessary to the exercise of the police power, and clause 78, authorizing regulations necessary or expedient for the promotion of health or the suppression of disease, authorized the city council to pass the ordinance. It was also held that municipalities are allowed a greater degree of liberty in legislating for the protection of the health of the community than on any other subject, and their powers in that respect are to be more liberally construed. If the health of the public, as there stated, is indispensable to the city, surely the safety of citizens and protection against being maimed

or killed are equally indispensable and a like liberal rule of construction should be adopted. That decision was affirmed in the Supreme Court of the United States so far as any Federal question was involved. *Gundling* v. *City of Chicago,* 177 U. S. 183.

In *Wice* v. *Chicago and Northwestern Railway Co.* 193 Ill. 351, clause 66 was again considered, and the court said that the provision was a delegation by the General Assembly to the city of Chicago of authority to pass and enforce all ordinances necessary for the comfort, safety, convenience, good order and welfare of its inhabitants.

In *City of Chicago* v. *Gunning System,* 214 Ill. 628, clause 66 was again held to embrace the subject matter of police regulation under the general police power of the State. The court said that there was ample power under that clause to pass reasonable ordinances concerning signs and bill-boards, and the decisions in *McPherson* v. *Village of Chebanse,* and *Gundling* v. *City of Chicago, supra,* were endorsed to the fullest extent. The police power was defined as that inherent or plenary power which enables the State to prohibit all things hurtful to the safety and welfare of society, and it was held that such power was delegated to the city by clause 66, subject to the condition that it should be reasonably exercised.

In *City of Chicago* v. *Bowman Dairy Co.* 234 Ill. 294, an ordinance requiring glass bottles or jars in which milk was sold to have a certain capacity was held to be a valid exercise of the police power, which extends, without any reservation, to the protection of citizens and to provisions for the safety and good order of society, and many cases were cited holding that doctrine.

If we apply with the utmost strictness the rule that a city can exercise only such powers as are expressly delegated to it by the General Assembly and such as are necessarily implied from those expressly given, it must still be said that the General Assembly has given to the city of

Chicago, in express terms, the power to make and enforce all necessary police regulations, and that, as held in *Spiegler* v. *City of Chicago, supra,* the word "necessary" does not mean "indispensable."

If any subject can be conceived of which requires the exercise of the powers assumed by this ordinance for the safety of the public it is the ascertainment of the qualifications and fitness of operators of automobiles and other motor vehicles driven through the streets of a city like Chicago. These ponderous vehicles, driven by powerful engines, are a menace to the public safety unless managed and driven by persons who are competent and qualified to operate them. Those used for transporting heavy merchandise are practically engine-driven freight cars. The owners of such vehicles are not different from other persons,— no better, no worse. They include not only the prudent and those considerate of the rights of others, but also the incompetent, the careless, reckless and lawless. The great majority are prudent and careful, but it is only human nature that arbitrary power should beget arbitrary act, and the symptoms and conduct before and after ownership are frequently well marked. Careless and incompetent operators endanger the public safety, and with another class the tooting of the horn is a warning to get off the highway or street, directed to the citizen for whose use it was originally laid out. Naturally enough, there has been a great loss of life on the public streets because of these vehicles, and very frequently in the darkness and excitement or tumult the operator has escaped. Everyone knows the dangers of the operation of these machines on the public streets, and especially in a metropolitan city, when the streets and crossings are thronged with citizens.

It is suggested that automobiles were not known and in use at the time of the passage of the Cities and Villages act, in 1872, but section 1 of article 5 was re-enacted with additional provisions in 1911, at a time when automobiles

and motor vehicles were common. (Laws of 1911, p. 173.) At the same session, in 1911, the General Assembly passed an act providing for the registration of motor vehicles and uniform rules regulating the use and speed thereof. (Laws of 1911, p. 487.) Section 12 of that act provides that no owner of a motor vehicle, except motor trucks and motor-driven commercial vehicles or motor bicycles, who shall have obtained a certificate from the Secretary of State, shall be required to pay any tax in excess of certain sums named therein, or to obtain any other license or permit to use or operate the same, nor be limited as to speed upon any public street except as provided in the act. It seems impossible to give to that provision any other construction than that the General Assembly intended to prevent the authorities of the city, even if its streets and crossings are crowded with people, from limiting the speed of automobiles and engine-driven vehicles to a less rate than ten miles an hour, with the exception of motor trucks and motor-driven commercial vehicles and motor bicycles, which are expressly excepted from the prohibition and exemption. There is also a proviso giving the city control of the excepted vehicles. That proviso is, that nothing in the act contained shall be construed as affecting the power of municipal corporations to make and enforce ordinances, rules and regulations affecting motor trucks and motor-driven commercial vehicles and motor bicycles which are used within their limits for public hire. The power exercised in this ordinance is by the proviso expressly reserved to the city.

The ordinance is valid, and the judgment is affirmed.

*Judgment affirmed.*