## PEOPLE'S TRANSIT CO. v. HENSHAW et al.

Circuit Court of Appeals, Eighth Circuit. April 18, 1927.

Rehearing Denied May 28, 1927.

No. 7529.

1. **Municipal corporations** ⬅️🌀703(1)—**Legislature may regulate use of streets or confer power on municipality.**

There is no vested right in the use of streets, and the Legislature may deny, grant, or condition such use, or delegate such powers to the municipalities.

2. **Municipal corporations** ⬅️🌀703(1)—**Statute and ordinance regulating autobusses held not invalid because of distinction between lines operated by street railway company and by others (Comp. St. Okl. 1921, § 4532, as amended by Laws 1923-24, c. 105).**

Comp. St. Okl. 1921, § 4532, as amended by Laws 1923-24, c. 105, and a city ordinance prohibiting operation of autobusses on streets occupied by street railway lines or on the first two streets on either side of a street so occupied and parallel thereto, *held* not discriminatory and invalid, because it excludes from such prohibition busses operated by the street railway company as a part of its transportation system.

3. **Trade-marks and trade-names and unfair competition** ⬅️🌀81—**Competition may be restrained for public good.**

Competition, like monopoly, may be restrained for the public welfare; the test in each instance being the public good.

4. **Receivers** ⬅️🌀167—**Receivers may maintain suit to restrain illegal acts directly affecting revenue of property in their charge.**

Receivers operating a street railway system *held* to have such interest as to entitle them to maintain a suit to restrain operation of bus lines in violation of a city ordinance which directly affects the revenue of the property in their charge.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit in equity by George A. Henshaw and others against the People's Transit Company. From an order granting a preliminary injunction, defendant appeals. Affirmed.

Warren K. Snyder, of Oklahoma City, Okl. (Edward C. Snyder, of Oklahoma City, Okl., on the brief), for appellant.

J. B. Dudley, of Oklahoma City, Okl. (Kent W. Shartel, of Oklahoma City, Okl., on the brief), for appellees.

Before STONE and VAN VALKENBURGH, Circuit Judges, and TRIEBER, District Judge.

STONE, Circuit Judge. This is an appeal from a temporary injunction restraining appellant from operating busses over the streets of Oklahoma City without first complying with every requirement of Ordinance No. 2987 of that city and from operating in violation thereof.

The complaint was filed March 25, 1926, by the receivers operating the street railway system in that city. The receivers, in conjunction with street cars, were operating busses as a part of their general transportation system within the city. Appellant (defendant below) was an independent company operating busses within the city. The bill alleged that the appellant was controlled, in its right to operate in the city, by Ordinance No. 2987; that it had not complied with any of the requirements thereof; that it operated on streets within the limits adjacent to car lines forbidden by such ordinance; that such operation was causing serious loss in revenue to the receivers; that the receivers claimed that such ordinance was not applicable to them but, as the city authorities claimed otherwise, they had complied fully therewith. A plea to the jurisdiction, a "response" and an answer were filed and the case heard on affidavits.

Appellant presents here several points:

(1) That the act of 1925 conferred no new powers on the receivers.

(2) That the act of 1925 is invalid because discriminatory.

(3) That Ordinance No. 2987 is invalid.

(4) That Ordinance No. 2987, as enforced, is invalid.

(5) That appellees had no property right affected entitling them to injunctive relief.

(6) That appellees have not complied with the ordinance, hence, do not come with clean hands to seek enforcement thereof against appellants.

To understand the controversy, it is necessary to have in mind the state of the law, state and city, at the time the bill was filed. In 1919, the Legislature passed its first act (Laws 1919, c. 129) on the subject of bus transportation within cities. In 1924 (Laws Sp. Sess. 1923–1924, c. 105) this act was amended. In 1925, an act (Laws 1925, c. 97) was passed specially applicable to use of busses by existing electric street railways companies. On March 4, 1924, the city passed an ordinance, No. 2713, which was, August 21, 1924, replaced by Ordinance No. 2797. February 9, 1926, another ordinance, No. 2987, was passed.

The act of 1919, as amended by the act of 1924, was as follows:

"Any person, firm or corporation may use automobiles or autobusses for the carrying of passengers for hire within any city of this state subject to the provisions hereinafter contained and reasonable regulation and control by the legislative authority of the city in which said business is conducted, which regulation may include the requiring of a policy of insurance or bond executed by a surety corporation authorized to do business in this state, as surety, covering liability in case of each automobile or autobus, the requiring of a definite schedule showing the route to be traversed and the time of all trips to be made, and which regulation may prohibit the carrying of passengers outside of said automobile or autobusses and may include any other requirement reasonable in its nature."

"No city shall have power to enact ordinances or regulations against the operating of automobiles or autobusses or jitney lines for the carrying of passengers by charging an unreasonable occupation tax. No city shall prescribe, enact or enforce any ordinance or regulation concerning the business of operating such vehicles for hire which is wholly and clearly prohibitive or unreasonable in its character: Provided any city may exclude the operation of automobiles for hire upon and along streets occupied and used by a street car line paralleling the same, and upon and along the first two streets on either side of a street occupied and used by a street car line; provided this act shall not apply to automobiles and autobusses licensed by the Corporation Commission of Oklahoma to do a carrying business between towns and cities within the state; provided also that the provisions of this act shall not apply to additions or parts of a city which are only served or connected by not more than two streets."

"Any such person, firm or corporation furnishing such jitney service or using automobiles or autobusses for carrying passengers for hire shall be subject to the taxes or license fee for such vehicle as they use as are required by the laws of the state of Oklahoma, and to such reasonable occupation tax by the ordinances of such city and no other."

The act of 1925 was as follows:

"Section 1. Owners of franchises for the operation of electric street railways propelled by means of tracks and trolleys shall have full power and authority under such franchises to extend such transportation systems by means of busses or other self-propelled vehicles, and such transportation shall be and become a part of the general transportation system of such street railway company, subject to all regulations imposed on such vehicles by law.

"Sec. 2. All acts and parts of acts in conflict herewith are hereby repealed."

The general act clearly gave a city the right to pass any ordinance regulating the operation and right to operate busses so long as such ordinance was not unreasonable. It specifically included liability bonds and occupation taxes and exclusion from street car lines for two paralleling streets as within the power of the city. The act of 1925 gave electric street railways the right to operate busses as "a part of the general transportation system of such street railway company, subject to all regulations imposed on such vehicles" and repealed conflicting legislation then existing.

[1] We think the effect of this legislation was to give cities the right to reasonably regulate busses whether operated by street railways or others and to make such differences between them as were reasonable. For example, a difference in occupation license might be discriminatory and unreasonable, because there appears no reasonable ground for charging one vehicle more for operation than a similar one of same character and capacity or weight. It might be reasonable to have a difference as to amount of liability bond because the street railway has much permanent property and investment which would be subject to its liabilities, while a purely bus company could easily remove practically all of its property. Also, the statute of 1925 would seem to contemplate a difference in treatment as to routes because it authorized the use of busses by the street railway company as a co-ordinated part of its general system and the permission in the 1924 act allowing cities to exclude busses from street car streets or those paralleling car lines

is for the sole purpose of protecting the street car systems from direct bus competition. There is no vested right in the use of streets. The Legislature may deny, grant or condition such use, or delegate such powers to the municipalities. This is the law under the Constitution of Oklahoma, as decided by the Criminal Court of Appeals of that state in McGuire v. Wilkerson, 209 P. 445, 448, and is the general rule. Packard v. Banton, 264 U. S. 140, 144, 44 S. Ct. 257, 68 L. Ed. 596. We have no doubt of the validity of the 1925 act, even as above construed.

[2] Is the governing ordinance invalid for the reasons urged? Section 1 of the ordinance defines busses. Section 2 requires a license certificate to be issued upon a verified application which shall identify the vehicle, its capacity, the route to be traveled and the schedule of trips. Section 3 requires liability bond. Section 4 prescribes an annual license fee of $15 for each passenger seat capacity and provides for substitution of vehicles. Section 5 requires display of name, license number, route and lights. Section 6 requires passengers to be seated. Section 7 regulates taking and discharge of passengers. Section 8 regulates speed. Section 9 regulates safety and cleanliness. Section 10 makes other ordinances applicable and provides invalidity of any provision shall not affect remainder of the ordinance. Section 11 is as follows:

"Section 11. The operation of jitney busses is hereby prohibited upon and along streets occupied and used by the street car lines paralleling the same and upon and along the first two streets on either side of streets occupied and used by a street line: Provided this ordinance shall not apply to automobiles and auto busses licensed by the Corporation Commission of Oklahoma to do a carrying business between towns and cities within the state; and provided also that the provisions of this section shall not apply to any additions or parts of the city which are only served or connected by not more than two streets; and further provided that this section shall not abridge or limit the authority granted to street railway companies by chapter 97 of the Session Laws of the state of Oklahoma for the year 1925 to operate busses or other self-propelled vehicles as a part of the general transportation system of such street railway companies."

Section 12 prescribes penalties for violation of the ordinance. Section 13 is the repealing section; section 14, the emergency section.

The particulars in which this ordinance is attacked here are those appearing in section 11. The clear intent and effect of that section is to permit an existing electric street railway company to operate busses upon streets where there are street car lines and upon the two streets on either side of and paralleling such lines while other busses are excluded from those streets. Unquestionably, this is a difference in favor of the street car companies. But all differences are not unreasonable and, therefore, illegal discriminations. In legislating for the public welfare, legislative bodies may, usually do, and should base their action upon actual conditions as they exist. It is to such conditions that the legislation will apply and it is such that will be affected thereby. Therefore, the matter of discrimination must be determined by an understanding of those conditions and of the effect designed or to be expected thereon from the legislation. If the difference is based upon a conception of the public welfare which finds reasonable basis in the existing conditions, it is not an illegal discrimination—otherwise, it is. The controlling factor is the welfare of the public affected.

The conditions present here were: That an existing extensive electric railway system was furnishing urban transportation to a city of considerable size. That system embodies large plants and trackage which insured the permanency and continued operation of that system. On the other hand, a bus system is, in this respect, the very opposite. It has no necessary element of permanency. If the bus business is unprofitable, the entire plant can be removed at once to more profitable fields. If the street car business is unprofitable, it must stay because of its large investment in permanent plant and of the crushing loss in any attempt to remove it or to suspend operation thereof. In any case, the people of the city must have local transportation whether it be by street cars, busses, a combination thereof or otherwise. There is a decided element of disadvantage to the people in having only a system of transportation which can disappear almost overnight at the will of the owners. There is a decided advantage to the people in having a system that cannot do so, but must, for its own protection, remain and furnish transportation. Obviously, the latter is more certain, more dependable and more subject to regulation in the public interest. The public cannot expect to retain the latter, nor can it compel operation of such, if the revenues thereof fall to a loss below operation costs. Also, where an adequate transportation system is serving the people, there is no reason of public welfare which demands that the same and closely adjacent streets shall have an additional system. The public wel-

fare does not demand such competition to secure reasonable rates or proper service because all such matters are subject to public regulation and control. The results of such competition, where there is not sufficient business to sustain all of the competitors, is that a season of experience causes all or some to drop out or compels the purchase of competitors (usually at exaggerated amounts), thus causing an increase of capital expenditure of the purchasers upon which the charges to the public must be based and thereby increased.

[3] These considerations, and others, amply justify differences to protect and preserve the existing permanent system. No new system has a legal right to destroy such existing system and have the public at its mercy. The public welfare is not served, but harmed thereby. The public may protect itself against such results. Nor can any theory of free competition change this situation. Competition is recognized and encouraged for the sole reason that it is supposed to result in the public good. But competition is not necessarily unrestrainable. It cannot be allowed to harm the very public it was designed to protect and aid. It may be restrained for the public welfare just the same as monopoly may be restrained or as competition may be left unrestrained. The test in each instance is the public good. Where the restraint upon competition is for the public good, it is sustainable just as restraint upon freedom of action by the individual is valid where for the public good. Such is the basis of and the reason for the entire police power.

The restraint of this ordinance (section 11) and that permitted by the statute of 1924 (section 4532), is that no bus line may parallel an existing street car line nearer than the third street. In practical effect, this means that the street car line is protected on its own street and for a block and a half on either side. Certainly, this is not the exercise of the power to protect the existing system to an unreasonable extent or for an unreasonable distance.

The question then arises whether the street railway, if it operates busses, shall be subject to the same restriction. Such a contention involves the patent inconsistency of using a provision intended for the protection of the railway to cripple it by preventing it using its busses wherever they will best serve the public as a part of its entire system of transportation. Not only is this violating the spirit and defeating the purpose of the restriction, but it may be harmful to the public. We conclude that the statute and the ordinance are valid.

There remain the contentions that appellees have no such property interest as to justify equitable relief and that appellees come to equity with unclean hands.

[4] As to the first: It is very clear that the operation of busses in violation of the ordinance would directly affect the revenues of appellees. That is a vital property interest to them.

As to the second: This contention is that the appellees operated busses, for some months prior to the enactment of this ordinance, in violation of the then existing ordinance, and that they have not complied with the requirements of the present ordinance. Appellees pleaded compliance with the present ordinance and the trial court found such as a fact. That finding is supported by substantial evidence and we see no reason to overthrow it. As they are so complying, it is immaterial what they did under some previous ordinance not now involved nor even in existence.

The decree should be and is affirmed.