CAPITOL TAXICAB CO. v. CERMAK, Mayor of City of Chicago, et al.

No. 11786.

District Court, N. D. Illinois, E. D.

Aug. 19, 1932.

Walter J. Miller and Walter L. Wenger, both of Chicago, Ill., for plaintiff.

William H. Sexton, Corporation Counsel, of Chicago, Ill. (Carl J. Appell and Benjamin J. Kanne, Asst. Corporation Counsel, both of Chicago, Ill., of counsel), for defendants.

Before PAGE, Circuit Judge, and LINDLEY and WOODWARD, District Judges.

LINDLEY, District Judge.

Plaintiff is a corporation seeking to be allowed to transact the business of transporting passengers for hire in taxicabs in the city of Chicago. It prays in its bill of complaint an injunction against the municipal authorities from enforcing a certain ordinance governing the licensing of such public vehicles.

The ordinance creates a public vehicle license commission and provides that no taxicab license shall issue unless the commission shall, after hearing, declare that "public convenience and necessity require the proposed service." However, it is further provided that such requirement shall not apply to the licensing of the same number of taxicabs as were licensed and operated by the applicant on the 16th day of September, 1929, or to the renewal of same annually thereafter or to the renewal of licenses for the same number of taxicabs of the applicant, as to which the commission shall, at any time prior to the application, have made a declaration as aforesaid. These exceptions, plaintiff contends, produce discrimination against it in violation of the Fourteenth Amendment of the United States Constitution.

The ordinance further provides that, in arriving at its decision as to public convenience and necessity, the commission shall take into consideration (a) the public demands and traffic conditions; (b) the financial condition of the applicant; (c) the number, kind, type of equipment, rates, and color schemes proposed; (d) increased traffic congestion and available parking space; (e) the safe use of the streets and such other "relevant facts as the commission may deem advisable or necessary." The burden is placed upon the applicant to prove beyond reasonable doubt that public convenience and necessity require the proposed additional operation of vehicles. These provisions, the plaintiff insists, amount to a delegation of arbitrary power to executive officers, whereby they may unreasonably adopt different rules for different parties.

Defendants move to dismiss the bill for want of equity, insisting that the ordinance is valid under the laws and Constitution of Illinois and in no way violative of the Fourteenth Amendment to the Federal Constitution.

The Legislature of Illinois has by the Cities and Village Act, chapt. 24, art. 5 of the Illinois Revised Statutes, delegated certain of its legislative power to control local affairs to the city council. Clause 7 of section 1 of said act (Smith-Hurd Rev. St. 1927, c. 24, § 65) grants to the last-named body power "to lay out, to establish, open, alter, widen, extend, grade, pave or otherwise improve streets * * * and public grounds"; clause 9, "to regulate the use of the same" and the 66th clause "to regulate the police of the city * * * and pass and enforce all necessary police ordinances." While, as the Supreme Court of Illinois states, in City of Chicago v. Kluever, 257 Ill. 317, at page 320, 100 N. E. 917, this is not a delegation of all the police power of the state, it is a grant of sweeping power of control over the streets, and sufficient, as held in the case cited, to sustain an ordinance requiring examination and license of all taxicab operators. "Necessary" police power does not mean indispensable police power, but is power conferred to pass all reasonable ordinances "conducive to the promotion of the health, safety and welfare of its inhabitants." To such extent the city may exercise restraint and control over the citizen and his occupation. Spiegler v. City of Chicago, 216 Ill. 114, 74 N. E. 718; Price v. People, 193 Ill. 114, 61 N. E. 844, 55 L. R. A. 588, 86 Am. St. Rep. 306; City of Chicago v. Kluever, supra. Any grant of use of the streets by any quasi public corporation may be made conditional upon performance by it of reasonable specified duties. People v. Suburban R. R. Co., 178 Ill. 594, 53 N. E. 349, 49 L. R. A. 650.

So the Supreme Court of Illinois, in People ex rel. v. Thompson, 341 Ill. 166, 173 N. E. 137, 138, after remarking that the sole limitation upon a city council in the passage of local laws is that the same shall be reasonable, in passing upon the ordinance now before this court, held the same valid under the Constitution and laws of Illinois. The court said:

"The Public Utilities Act does not take from cities and villages the previously con-

ferred power to regulate taxicabs. The taxicab business, as a general rule, does not include the operation of a conveyance or vehicle over specified routes, under a regular schedule as to time or between definite points, and hence, within the meaning of the Public Utilities Act, a taxicab is not ordinarily a public utility. Newcomb v. Yellow Cab Co., P. U. R. 1916B, 983; Southern Illinois Light & Power Co. v. Norton, P. U. R. 1916B, 987 [note]; Austin Bros. Transfer Co. v. Bloom, 316 Ill. 435, 147 N. E. 387. The right to regulate includes the right to impose reasonable conditions and restrictions. Westgate v. Adrian Township, 161 Mich. 333, 126 N. W. 422; McWethy v. Aurora Electric Light & Power Co., 202 Ill. 218, 67 N. E. 9. The power to regulate the use of streets by vehicles includes the power to promote the general welfare and prevent accidents, and the reasonableness of police regulation is not necessarily what is best, but what is fairly appropriate under all circumstances. Weksler v. Collins, 317 Ill. 132, 147 N. E. 797; Sligh v. Kirkwood, 237 U. S. 52, 35 S. Ct. 501, 59 L. Ed. 835. An ordinance will be presumed reasonable until the contrary is proved. City of Chicago v. Washingtonian Home, 289 Ill. 206, 124 N. E. 416 [6 A. L. R. 1584]; People v. Village of Oak Park, 266 Ill. 365, 107 N. E. 636. The legislative branch of the state or city may delegate to an administrative board duties involving the exercise of administrative discretion. City of Chicago v. Marriotto, 332 Ill. 44, 163 N. E. 369, 60 A. L. R. 501; People v. Roth, 249 Ill. 532, 94 N. E. 953, Ann. Cas. 1912A, 100; Block v. City of Chicago, 239 Ill. 251, 87 N. E. 1011, 130 Am. St. Rep. 219; Arms v. Ayer, 192 Ill. 601, 61 N. E. 851, 58 L. R. A. 277, 85 Am. St. Rep. 357."

Passing to the specific provisions of the ordinance the court used this language:

"The ordinance in question does not delegate unregulated discretion to the public vehicle license commission. City of Chicago v. Washingtonian Home, supra; Arms v. Ayer, supra; Milstead v. Boone, 301 Ill. 213, 133 N. E. 679. The foregoing authorities sustain the proposition that a city council may authorize others to do things which it might properly but cannot understandingly or advantageously do.

"The ordinance is not discriminatory on the ground that it singles out taxicabs for regulation and does not apply to private vehicles or other public vehicles drawn by horses. No one has any inherent right to use the streets or highways as a place of business. Where one seeks a special or extraordinary use of the streets or public highways for his private gain, as by the operation of an omnibus, truck, motorbus, or the like, the state may regulate such use of the vehicle thereon or may even prohibit such use. Chicago Motor Coach Co. v. City of Chicago, 337 Ill. 200, 169 N. E. 22, 66 A. L. R. 834; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596; Davis v. Massachusetts, 167 U. S. 43, 17 S. Ct. 731, 42 L. Ed. 71."

This language effectually disposes of the contention that the erection of the commission and placing within it the power hereinbefore mentioned is an unconstitutional delegation of authority to the commission. Of the same import is Milstead v. Boone, 301 Ill. 213, 133 N. E. 679.

Nor can it be successfully asserted that a requirement of investigation of the financial condition of the applicant is unreasonable. The financial responsibility of a taxicab operator is a pertinent and justifiable element to be considered by the city, acting in pursuance of its police powers, in determining whether the safety of the public is being properly protected. Weksler v. Collins, 317 Ill. 132, 147 N. E. 797, and many cases there cited. See, also, Roy v. Ill. Com. Com., 322 Ill. 452, 153 N. E. 648; Egyptian Transp. System v. L. & N. R. R., 321 Ill. 580, 583, 152 N. E. 510; Wilcox Transp. Co. v. Com. Com., 328 Ill. 455, 159 N. E. 788; Chicago Rys. Co. v. Com. Com., 336 Ill. 51, 167 N. E. 840, 67 A. L. R. 938.

In view of the language of the statute and of the decisions noted, it follows that the ordinance is a valid exercise of power, unless there is something therein contained violative of the Federal Constitution. In this connection, it is contended that the ordinance places upon new applicants requirements not exacted of taxicab proprietors operating at the time of passage thereof. In People v. Evans, 247 Ill. 547, 93 N. E. 388, 392, the court had for decision a question as to the constitutionality of a law providing for the licensing of miners and requiring all applicants to take an examination as to their qualifications, unless they had been for two years and were at the time of the passage of the act actually engaged in mining. This exception, it was contended, worked an unconstitutional injury by discrimination, preventing equal protection of the laws. The court said: "As we view the provision of the statute which exempts the miner from an examination if he was employed in mining in this state at the time the statute went into effect,

as a prerequisite to issuing him a certificate, it does not confer upon such minor any privilege, right, or immunity, and does not discriminate in his favor as against the miner who was not so employed at the time the statute became effective. The most that can be said is that the statute leaves the miner who has had two years' experience in mining coal and was employed in mining coal in this state at the time the statute went into effect, in the precise situation that he was in before the statute was passed,—that is, it permits him to continue his employment upon his satisfying the miners' examining board that he had been for two years engaged in mining coal, and was engaged in mining coal in this state at the time the statute went into effect. Neither does it take from the miner who resides in this state or resides out of this state, and who has had two years' experience in mining, any privilege, right, or immunity, but leaves such miner where it found him when the statute was passed—that is, without employment in a coal mine—and if he desires to again engage in mining, then the statute provides that he may do so by passing an examination and otherwise complying with the statute. In the one instance the law is just to the miner who was employed when the law went into effect, as it permits him to continue his employment, while it does not in any way work an injustice to the miner who has for years, or even temporarily, abandoned the mining of coal and again desires to be employed in that calling."

In an earlier case, Williams v. People, 121 Ill. 84, 11 N. E. 881, the court, in passing upon the validity of a law exempting from examination for license all physicians who had practiced for ten years, said: "This proviso does not confer upon the 10-year practitioners any special privilege, immunity, or franchise. It does not confer upon them anything; it leaves them as they are."

In People v. Logan, 284 Ill. 83, 119 N. E. 913, 914, the court held constitutional a law requiring all barbers to have had three years' apprenticeship before securing a license to practice their profession, unless they were at the time of the enactment engaged in the occupation of a barber. The court remarked: "It is argued that the act provides no protection against the incompetence and ignorance of barbers who were engaged in the business at the time of the passage of the act, and is class legislation, intended to restrict those engaged in the trade of a barber in the interest of a favored class; that is, those already engaged in that occupation. The statute was intended to be prospective only in its operation, and it was not unreasonable to provide that it should not apply to those already engaged in the business upon condition that they should apply, in conformity with the act, for registration within 90 days of its approval."

Similarly phrased statutes have been held valid in the following cases: Criswell v. State (1915) 126 Md. 103, 94 A. 549; Commonwealth v. Ward et al. (1909) 136 Ky. 146, 123 S. W. 673; State v. Zeno (1900) 79 Minn. 80, 81 N. W. 748, 48 L. R. A. 88, 79 Am. St. Rep. 422; Ex Parte Lucas (1901) 160 Mo. 218, 61 S. W. 218; Ex Parte McManus (1907) 151 Cal. 331, 90 P. 702; Manos v. Seattle (1927) 146 Wash. 210, 262 P. 965; State v. Fraternal Knights & Ladies (1904) 35 Wash. 338, 77 P. 500; Ex Parte Stoltenberg (1913) 165 Cal. 789, 134 P. 971; In re Opinion of the Justices (1925) 251 Mass. 569, 147 N. E. 681, 696; City of Aurora v. Burns (1925) 319 Ill. 84, 96, 149 N. E. 784; State ex rel. Manhein v. Harrison (1927) 164 La. 564, 114 So. 159; Spector v. Building Inspector of Milton (1924) 250 Mass. 63, 145 N. E. 265; State v. Stegner (1929) 120 Ohio St. 418, 166 N. E. 226, 64 A. L. R. 916; Gorieb v. Fox (1927) 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210.

In People's Transit Company v. Henshaw, 20 F.(2d) 87, 89 (C. C. A. 8) the court held constitutional a statute and city ordinance which forbid autobusses on streets occupied by street railways, unless such autobusses be operated by the street railways as a part of its operation. There the court said: "The particulars in which this ordinance is attacked here are those appearing in section 11. The clear intent and effect of that section is to permit an existing electric street railway company to operate busses upon streets where there are street car lines and upon the two streets on either side of and paralleling such lines while other busses are excluded from those streets. Unquestionably, this is a difference in favor of the street car companies. But all differences are not unreasonable and, therefore, illegal discriminations. In legislating for the public welfare, legislative bodies may, usually do, and should base their action upon actual conditions as they exist. It is to such conditions that the legislation will apply and it is such that will be affected thereby. Therefore, the matter of discrimination must be determined by an understanding of those conditions and of the effect designed or to be expected thereon from

the legislation. If the difference is based upon a conception of the public welfare which finds reasonable basis in the existing conditions, it is not an illegal discrimination—otherwise, it is. The controlling factor is the welfare of the public affected."

After discussing the facts the court concluded: "These considerations, and others, amply justify differences to protect and preserve the existing permanent system. No new system has a legal right to destroy such existing system and have the public at its mercy. The public welfare is not served, but harmed thereby. The public may protect itself against such results. Nor can any theory of free competition change this situation. Competition is recognized and encouraged for the sole reason that it is supposed to result in the public good. But competition is not necessarily unrestrainable. It cannot be allowed to harm the very public it was designed to protect and aid. It may be restrained for the public welfare just the same as monopoly may be restrained or as competition may be left unrestrained. The test in each instance is the public good. Where the restraint upon competition is for the public good, it is sustainable just as restraint upon freedom of action by the individual is valid where for the public good. Such is the basis of and the reason for the entire police power."

The Supreme Court reasons likewise in Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 259, 68 L. Ed. 596. There the court said: "If the state determines that the use of streets for private purposes in the usual and ordinary manner shall be preferred over their use by common carriers for hire, there is nothing in the Fourteenth Amendment to prevent. The streets belong to the public and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary and, generally at least, may be prohibited or conditioned as the Legislature deems proper."

Of interest, likewise, are Weksler v. Collins, 317 Ill. 132, 147 N. E. 797; Gorieb v. Fox, 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016.

Plaintiff, in this connection, relies upon Frazer v. Shelton, 320 Ill. 253, 150 N. E. 696, 700, 43 A. L. R. 1086, but it should be observed that the court there approved the doctrine above enunciated in the following pertinent language: "While a statute intended to be prospective may provide that it shall not apply to those already in the occupation to be licensed, under conditions named, * * * such exemption must be made to apply equally to all similarly situated."

To the argument that the ordinance tends to create a monopoly, it is sufficient answer that the city has not by its legislation, surrendered its right to grant other and further certificates to all other applicants. It may still grant applications, and undoubtedly adequate remedy exists against affirmative exercise of arbitrary authority in that respect. The public policy of Illinois has been declared by the Legislature of Illinois, according to the interpretations of the Supreme Court, to be that, before one utility or public carrier is permitted to enter the business of another already in the field, it is but a matter of fairness and justice that it be shown that the new utility answers the demands of public convenience and necessity.

In view of the foregoing, we are of the opinion that the bill of complaint does not state a cause of action, and that the motion to dismiss the same for want of equity should be, and it is, accordingly allowed.