44

THE CITY OF CHICAGO, Appellee, *vs.* OLINTO MARRIOTTO, Appellant.

*Opinion filed October 25, 1928.*

BRAUN, ANDERSON & NORBY, (JOSEPH H. BRAUN, and T. RUSSELL BAKER, of counsel,) for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, (LEON HORNSTEIN, and JAMES I. MCCARTHY, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Olinto Marriotto was arrested for the alleged violation of an ordinance of the city of Chicago regulating vehicular and pedestrian traffic within that city. A jury trial was waived and the cause heard by one of the judges of the municipal court. Defendant was found guilty and a fine of three dollars was assessed against him. Judgment was entered against him for such fine and for costs of suit in amount of two dollars, and execution was ordered to issue for the total amount. Defendant prayed and was allowed an appeal. The constitutionality of the city traffic ordinance was raised in the lower court, and the trial judge having certified the validity of a municipal ordinance was involved and that the public interest required the case to be determined by the Supreme Court, the defendant has brought the cause directly to this court for review.

The facts as shown by the record are substantially as follows: About 3:45 o'clock on the afternoon of November 8, 1927, Olinto Marriotto (hereafter referred to as appellant) was driving an automobile west on Madison street, in the city of Chicago. When he reached Dearborn street, a north and south street which intersects Madison street, he started to make a right turn to the north into Dearborn street and was prevented from doing so by a traffic policeman in the employ of the city and who was at the time stationed at that street intersection for the purpose of regulating traffic. Dearborn street from Madison street north to Washington street was at the time so full of vehicles that there was no room for appellant's car or other additional vehicles. The traffic policeman requested appellant to make a left turn at this street intersection or to continue straight west on Madison street. Appellant refused to obey the traffic officer but remained in the street intersection for a period of time equal to two changes of the traffic lights, and thereby caused the blocking of traf-

fic in Madison street as far east as State street. The traffic officer then called another policeman, who arrested appellant for refusing to obey the traffic officer. The record shows that the intersection of Madison and Dearborn streets is within a crowded district of the city of Chicago, and that the traffic ordinance here involved and which was introduced in evidence prohibited a left turn at the place in question. There was no law or ordinance at the time preventing the making of a right turn north into Dearborn street by appellant.

The city traffic ordinance was passed by the city council in March, 1927, and section 2 of article 2, which is alleged to have been violated by appellant, is as follows: "Officers of the police department are hereby authorized to direct all traffic in accordance with the provisions of this ordinance, or in emergencies as public safety or convenience may require, and it shall be unlawful for any person to fail or refuse to comply with any lawful order, signal or direction of a police officer. Except in case of emergency it shall be unlawful for any person unauthorized by the superintendent of police to direct or attempt to direct traffic."

Appellant contends that section 2 deprives motorists and drivers of other vehicles of their liberty without due process of law and deprives them of the equal protection of the laws; that the section is an unwarranted and void delegation of power to an individual, and is therefore in contravention of the constitutions of the State of Illinois and of the United States. We deem it unnecessary to set out in detail the several points and arguments thereon as presented by counsel for appellant in support of their contention. We are convinced that their view of the case is brought about by an unduly strained construction or captious interpretation of the section of the ordinance previously quoted. The traffic ordinance as passed by the Chicago city council, and which covers twenty-eight pages of the abstract, seems to be a rather full and complete measure

drafted and enacted for the purpose of regulating and governing pedestrian and vehicular traffic within that large city. No question is raised in the case about the power of a municipality to regulate and control travel upon its streets. Such regulations are now, due to the crowded condition of traffic, an absolute necessity for the safety and welfare of the public. The section here questioned, fairly construed, authorizes officers of the police department to direct all traffic in accordance with the provisions of the traffic ordinance except in times of an emergency, at which times such officers shall direct the traffic as public safety or public convenience may require. There is no occasion contemplated when an officer may arbitrarily direct traffic under the provisions of the ordinance. The only discretion left to a traffic officer and seemingly contemplated by the ordinance is in case of emergencies, and on those occasions traffic is not to be handled arbitrarily but as public safety or convenience requires. The ordinance further contemplates a lawful order, signal or direction to be given by a traffic officer before there is any liability on the part of any person for noncompliance therewith. Hence, in any case, if a lawful or reasonable discretion is not exercised by such traffic officer a court may ultimately decide such question.

Appellant complains that the ordinance contains no definition of or direction as to when an emergency exists; that an officer is left to exercise his own judgment on the existence of an emergency, and that traffic blockades are not included within the meaning of the word "emergency." It would be almost impossible to. state in an ordinance or law every condition or set of circumstances wherefrom an emergency might be said to arise or exist. The word itself, as defined by most lexicographers, means or implies a pressing necessity; an unforeseen occurrence or combination of circumstances which calls for immediate action or remedy. Undoubtedly it may be presumed that any traffic officer who is sufficiently capable of being placed on duty at a

busy street intersection for the purpose of directing traffic will perform his duty with reasonable intelligence and will recognize an emergency when such a necessity or combination of circumstances is presented. As we view it, traffic blockades under present crowded conditions in most cities present a situation which sufficiently warrants their being included within the term "emergency." It is a well known fact that police or traffic officers in cities where crowded conditions exist are called upon frequently to relieve the congestions and snarls of vehicular traffic. Discretion and judgment are necessarily allowed to be exercised by such officers for the purpose of keeping the streets and avenues clear for passage and for the protection of pedestrians as well as vehicular drivers. It is true that a legislative body, such as the city in this instance, cannot divest itself of its proper function to determine what the law shall be, but it may authorize others to do things which it might properly but cannot understandingly or advantageously do. Local laws usually call into action to a greater or less extent the agency and discretion of people or individuals to accomplish in detail what is authorized or required in general terms. Government could not be carried on if nothing could be left to the judgment and discretion of administrative officers. This doctrine is sound and has been adhered to for many years. *Block* v. *City of Chicago*, 239 Ill. 251.

We have stated what we think is a fair interpretation of the section of the traffic ordinance here attacked, and are unable to see wherein that section contravenes any of the provisions of the State or Federal constitution, as contended by appellant.

The judgment of the municipal court of Chicago will therefore be affirmed.              *Judgment affirmed.*