Kellerman *v.* Philadelphia, Appellant.

Argued October 27, 1939.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*Samuel Feldman,* Assistant City Solicitor, with him
*Joseph Sharfsin,* City Solicitor, for appellant.

*J. George Lipsius,* with him *Samuel R. Wurtman,* for
appellee.

OPINION BY RHODES, J., April 18, 1940:

This is a proceeding in equity. Appellees (plaintiffs
below) are proprietors of barber shops in the City of
Philadelphia. They obtained an injunction in the court

below against the enforcement of those provisions of an ordinance regulating the general conduct of barber shops and the business of barbering which restricted the hours during which barber shops might remain open for business. The injunction was directed against appellants, the City of Philadelphia, its Mayor, its Director of Public Health, and their successors.

The ordinance in question was first adopted on June 27, 1935, and was amended on August 15, 1938. Section 10 of the ordinance, as amended, reads as follows: "Barber shops, barber schools and barber colleges shall not be open nor conduct business on any week day prior to eight o'clock ante meridian nor after eight o'clock post meridian; save and except that on Saturday they may continue to be open and conduct business until nine o'clock post meridian: *Provided, however,* That the Director of Public Health upon application of the proprietor of any barber shop and proof that barber service to the public so requires, may issue a permit for the operation of a particular barber shop at such hours beyond those above prescribed as in the opinion of the said Director of Public Health public necessity may require; such permit shall be for a period not exceeding one month and may be renewed upon further proof of the necessity therefor. On the day preceding a legal holiday, barber shops, barber schools and barber colleges may remain open until nine o'clock post meridian. The hours of opening and closing refer to Eastern Standard Time except during those periods when Daylight Saving Time is in common use in the City of Philadelphia, such hours shall have reference to and be computed as Daylight Saving Time. The Bureau of Police shall assist and co-operate with the Department of Public Health in enforcing the provisions of this ordinance."

Appellees sought restraint upon the enforcement of the prescribed opening and closing hours by a bill in equity. It was therein asserted that the ordinance was unconstitutional, among other particulars, in that it

delegated power unconstitutionally to the Director of Public Health, and was an unreasonable exercise of the police power over matters of no real or substantial relation to public health. Preliminary objections were filed to the bill. Hearing was then held on the bill for preliminary injunction, a preliminary injunction was granted, and the preliminary objections were dismissed by the court below, which held the ordinance unconstitutional for both the reasons above stated. A decree was entered granting the preliminary injunction pending final hearing. The parties then stipulated that any answer raising issues of fact be dispensed with, and the preliminary injunction made permanent as if after final hearing and determination, with leave to appellants to file exceptions. Exceptions were filed charging that the court below erred in reaching the conclusions leading to, and in entering, its decree. These exceptions were dismissed, and their dismissal is here made the basis of various assignments of error.

We express no opinion as to the directness of relation between the public health and the provisions of the challenged section of the ordinance, but we are convinced that the court below correctly held the section contained an unconstitutional delegation of legislative power.

Legislative power in Pennsylvania is vested solely in the General Assembly by article 2, section 1, of the Constitution of Pennsylvania, PS Const. art. 2, §1. The mandatory provision embodied in this section of the Constitution has been many times interpreted by our courts in respect to a variety of enactments of the legislature imposing upon some persons or body of persons duties or powers concerning application or enforcement of the provisions of the particular enactment. Appellants, in support of their contention that the ordinance does not involve a delegation of legislative authority, cite and rely upon the following cases: *Locke's Appeal*, 72 Pa. 491; *Commonwealth v. Puder*, 261 Pa. 129, 104 A.

505; *Gima v. Hudson Coal Co.*, 310 Pa. 480, 165 A. 850; *American Baseball Club of Philadelphia v. Philadelphia et al.*, 312 Pa. 311, 167 A. 891; *Commonwealth v. Falk (No. 1)*, 59 Pa. Superior Ct. 217.

In *Locke's Appeal*, supra, the constitutionality of the Act of May 3, 1871, P. L. 522 (a local option act) was determined, and it was held that the legislature may pass such a law to become effective only upon local option.

In *Commonwealth v. Puder*, supra, the Supreme Court considered and found constitutional the Act of June 17, 1915, P. L. 1012, providing measures for the regulation of the business of loaning money in amounts not exceeding $300, and authorizing the Banking Commissioner to issue licenses to engage in such business.

In *Gima v. Hudson Coal Co.*, supra, it was held valid for the legislature to provide that the use of explosives in mines shall be regulated by the rules adopted by the manufacturer of explosives.

*American Baseball Club of Philadelphia v. Philadelphia et al.*, supra, was a case involving an ordinance of the City of Philadelphia imposing upon the holding of athletic contests a license fee calculated at the rate of $5.50 per day per policeman reasonably estimated by the Director of Public Safety to be necessary to protect public safety at such gatherings. A decree of the court of common pleas restraining enforcement of the ordinance was reversed by the Supreme Court, which held the vesting of power in the Director of Public Safety to determine the number of policemen necessary not to be a delegation of legislative power. In an opinion by Mr. Justice KEPHART the court said (p. 317) : "A rate is fixed, but the application of the rate is dependent upon extraneous facts to be found by an administrative official. . . . . . In this case while the rate is definite, $5.50 per policeman required for an eight hour day, the base to which the rate is to be applied is left to administrative officers for determination: here the num-

ber of policemen necessary to maintain the public order, insure the public safety, protect and incidentally promote appellees' business."

In *Commonwealth v. Falk,* supra, the power of the Department of Agriculture (State Live Stock Sanitary Board) to adopt and enforce rules for the examination and testing of cattle, and quarantining of diseased cattle was sustained.

Also of pertinence to the present inquiry is *Commonwealth v. Sweeney,* 61 Pa. Superior Ct. 367. There the Act of May 8, 1909, P. L. 470, prohibited the manufacture and sale of adulterated or misbranded drugs, and defined an adulterated drug as one "sold under or by any name recognized by the United States Pharmacopoeia, the National Formulary, or the American Homeopathic Pharmacopoeia," if "it differs from the standard of strength, quality or purity as determined by the test or formula laid down in" those standard works. Upon motion, an indictment for violation of the act was quashed for the reason that it amounted to delegation of legislative power. The order was reversed by this court.

We also refer to *Rohrer v. Milk Control Board,* 322 Pa. 257, 186 A. 336, where primary standards were established by the statute and the duty delegated to make the policy of the legislature effective. In this case the Supreme Court reversed the judgment of this court at 121 Pa. Superior Ct. 281, on the dissenting opinion of President Judge KELLER to the effect that no unconstitutional delegation of legislative power had been committed in the Act of January 2, 1934, P. L. 174, authorizing the Milk Control Board to fix minimum prices to be paid for milk by dealers to producers or other dealers, and by consumers to dealers and stores.

The principle for which these decisions stand may be stated thus: The legislature constitutionally may refer to a person or body of persons, within limits, set by the terms, purpose, or policy of the enactment, or by recog-

nized scientific findings in various fields, the independent determination of facts upon which the application or enforcement of the law is to depend.

In every case to which we have referred the actual enforcement of the law was controlled by a standard created by the avowed policy, purpose, or terms of the legislation itself, or adopted by the legislature from fields of exact science, but in any case in some degree extraneous to and independent of the mind and judgment of the enforcing officer. See, also, *Buttfield v. Stranahan,* 192 U. S. 470, 24 S. Ct. 349, 48 L. Ed. 525; *Union Bridge Co. v. United States,* 204 U. S. 364, 27 S. Ct. 367, 51 L. Ed. 523; *Red "C" Oil Mfg. Co. v. Board of Agriculture of North Carolina,* 222 U. S. 380, 32 S. Ct. 152, 56 L. Ed. 240; *J. W. Hampton, Jr., & Co. v. United States,* 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624; *Panama Refining Co. v. Ryan,* 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 446.

But any legislative enactment which vests in a person or body of persons free of any standard independent of his or their own mind and judgment the power of supplying, or giving force to, or suspending its terms falls beyond the limits of judicial approval evidenced in the foregoing authorities, and is unconstitutional as a delegation of the power reposed exclusively in the legislature. An example of such a law we find in *O'Neil v. Insurance Co.,* 166 Pa. 72, 30 A. 943. The statute in question in that case directed the Insurance Commissioner to prescribe a standard policy of insurance and to forbid the use of any other. It was held unconstitutional by our Supreme Court, which said (p. 79) : "The elementary books divide a statute into three parts, the declaratory, the directory and the vindicatory. In this statute the legislature furnished the first and third. It delegated the preparation of the second. It declared in effect the need of a standard form of policy. It provided punishment for the failure to use such form when provided; but it turned the preparation of the form over

to its appointee and gave him six months in which to do his work and file a copy of it in his own office. Whoever might be interested in knowing the directory part of the statute and understanding what it was he was required to do, had to go beyond the act of assembly and inquire of the appointee of the legislature what it was he had filed in his own office, of which the people of the Commonwealth were bound to take notice at their peril.

. . . . . .

"We do not see how a case could be stated that would show a more complete and unconstitutional surrender of the legislative function to an appointee than that presented by the Act of 1891. By its provisions the legislature says in effect to its appointee, 'Prepare just such a policy or contract as you please. We do not care to know what it is. The governor shall have no opportunity to veto it. File it in your own office and we will compel its adoption, whether it is right or wrong, by the punishment of every company officer or agent who hesitates to use it.' "

This language was quoted with approval in *Holgate Bros. Co. et al. v. Bashore et al.,* 331 Pa. 255, 200 A. 672, where the Supreme Court, in an opinion by Mr. Justice DREW, declared unconstitutional the Act of July 2, 1937, P. L. 2766, described as the General 44-Hour Week Law, as an impossible delegation to the Department of Labor and Industry in conjunction with the Industrial Board of the power to make laws for the regulation of hours of labor. The offending provision reads as follows: "(b) Where the strict application of the schedule of hours provided for by this section, imposes an unnecessary hardship and violates the intent and purpose of this act, the Department of Labor and Industry, with the approval of the Industrial Board, may make, alter, amend and repeal general rules and regulations prescribing variations from said schedule of hours; Provided, That with respect to any industry whose schedule of hours is established by Federal regulation, the schedule to be

fixed by the Department of Labor and Industry, with the approval of the Industrial Board, shall conform to the schedule established by any such Federal regulatory body." The Supreme Court said (p. 263): "If this condition is found to exist, the statute provides no limit to the exercise of the discretion of the Department with the approval of the Industrial Board to prescribe variations from the schedule of hours laid down in the act. This may be done by means of general rules and regulations which may be made, altered, amended and repealed at discretion. The Department is then free to fix the hours of labor in any industry, group of industries, or in individual cases, without any guide or restraint of any kind; the hours may be shortened to six a day or extended to ten or twelve a day. There is no policy set up, there are no standards, there are no boundaries within which the Department and the Board must exercise their discretion. There are no requirements for hearings, findings of fact with reasons for conclusions, or appeals. There is merely a naked authority given to the Department and the Board to make law by general rules and regulations prescribing variations from the said schedule of hours, and to alter, amend or repeal such rules and regulations. The power to amend or repeal a statute is as much legislative in nature as the power to enact the statute. It is impossible to find any restrictive policy in such a grant."

We think that section 10 of the ordinance must stand or fall in its entirety. The court below in its opinion aptly said: "Since the ordinance contains a severability clause, we might be led to the conclusion that only this proviso of the ordinance is unconstitutional, and that the remainder of Section 10 fixing the hours for opening and closing of barber shops as being between the hours of 8 a. m. and 8 p. m. should remain in full force and effect, were it not for the fact that the right of the City of Philadelphia to pass an ordinance 'to fix the days and hours during which barber shops' in the City of Phila-

delphia may be open for business is granted by the Act of June 5, 1937, P. L. 1689, Section 15a, on the express condition that the proviso in question should be contained in the ordinance."

In *Village of Little Chute v. Van Camp,* 136 Wis. 526, 117 N. W. 1012, an ordinance of the village provided: "All saloons in said village shall be closed at 11 o'clock p. m. each day and remain closed until 5 o'clock on the following morning, unless by special permission of the president." The defendant was convicted of violating this ordinance, and on appeal his conviction was reversed and the case remanded for his discharge. The ordinance was held void, inter alia, as conferring a power to legislate which by statute (St. 1898, §893, subd. 26) was vested in the village board alone and could not be delegated. The court also said: "It is said that the latter clause of the ordinance may be stricken out as unconstitutional, and the balance, requiring saloons to close at 11 o'clock, may still be held valid. This, however, cannot be done, because it is very plain that the clause giving the president power to suspend the operation of the law at will is a compensation for the first clause. They are bound together, and the invalid clause was evidently a material inducement to the otherwise valid portion."

The Act of June 19, 1931, P. L. 589, and the amendatory Act of June 5, 1937, P. L. 1689, 63 PS §551 et seq., also carry severability clauses, and section 55 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §555, also provides that the provisions of every law shall be severable, and sets forth the rule to be applied in the construction of laws.

In *Bagley Co. v. Cameron,* 282 Pa. 84, 127 A. 311, it is stated, in effect, that a statute can be saved by severability only if its entirety of thought is not destroyed. Again, in *Suermann et al. v. Hadley, Treasurer, et al.,* 327 Pa. 190, at page 198, 193 A. 645, at page 650, our Supreme Court said: "A statute may be unconstitu-

tional in part and yet be sustained with the offending part omitted, if the paramount intent of the legislature will not be destroyed thereby. [Cases cited.]" In *Commonwealth ex rel. Margiotti v. Sutton et al.*, 327 Pa. 337, 350, 193 A. 250, it was held that the offending provisions of the act therein questioned were so integrated with the general statutory scheme that they could not be severed without destroying the unity of the legislative purpose. So, in the instant case, it cannot be presumed that the legislature intended that the power to fix the days and hours during which barber shops may be open for business conferred by section 15a of the Act of June 19, 1931, P. L. 589, as amended by the Acts of May 9, 1935, P. L. 158, and June 5, 1937, P. L. 1689, 63 PS §566, should stand alone in the absence of the mandatory proviso.

When section 10 of the ordinance in question is measured against the authorities to which we have referred, the character of its provisions is apparent. The standard erected for the guidance of the Director of Public Health in the exercise of his discretion to suspend the provision of the ordinance is "public necessity" as "in the opinion" of that officer it may appear. This is not a sufficient standard to properly guide his determinations. He is entrusted with purely discretionary powers. The term "public necessity" has no other meaning than that which may be attributed to it by him in his "unfettered and uncontrolled" judgment upon each application. The power delegated to him is clearly legislative in nature, and unlawful.

We are of the opinion that section 10 of the ordinance of June 27, 1935, as amended on August 15, 1938, is invalid in its entirety.

All the assignments of error are either without merit or immaterial to our decision of this case, and are overruled.

The decree of the court below is affirmed, at the cost of appellants.