## Commonwealth, Appellant, *v.* Reitz.

Argued September 25, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*George T. Walker,* with him *Harrington Adams,* Deputy Attorney General and *James H. Duff,* Attorney General, for appellant.

No one appeared or filed a brief for appellee.

OPINION BY HIRT, J., October 27, 1944:

Defendant was convicted summarily of a violation of a rule of the State Council of Defense, adopted under the authority and in furtherance of the Air Raid Precautions Act of April 13, 1942, P. L. 37. He was sentenced to pay a fine. After a hearing de novo, on appeal to the quarter sessions, the court specifically found that defendant was chargeable with violation of the rule in question but concluded that the act is unconstitutional on the ground that in it there is a delegation of the power to legislate as well

as to create and define offenses punishable under the act. Upon the discharge of the defendant on this pure question of law the Commonwealth properly appealed to this court. *Com. v. Simpson,* 310 Pa. 380, 165 A. 498.

The State Council of Defense came into being because of the then "emergency or public need in the nation [and] the State" and was established on the authority of the Act of March 19, 1941, P. L. 6, 71 PS 1681. The Council under the act was composed of the Governor, seven other designated State officers and three citizens serving by appointment. The preamble of the Air Raid Precautions Act recognized "the supreme emergency of world-wide war" and the "imminent danger to the lives and property of citizens ...... from air raids calling for a state of preparedness to meet such danger" by "an adequate defense." It emphasized "an united and coordinated effort of civilian and state, local and volunteer agencies and facilities [as] essential in formulating and complying with precautionary measures to meet the emergency," including practice air raid drills and blackouts. Accordingly, the act empowered the State Council of Defense, and imposed the duty upon it, "to take such precautionary measures as may be necessary for the safety, defense and protection of the civilian population ...... and property within the Commonwealth with respect to air raids." The act provided: "In furtherance of this power and duty, the State Council of Defense shall have the power to adopt, promulgate and enforce rules, regulations and orders for this purpose ...... [with] the same force as if they formed a part of this Act." Violation of any provision of the act or of any rule of the council so adopted was made an offense punishable in a summary proceeding by fine or imprisonment.

A rule of the council provided that during either drill or attack "All persons [with exceptions not applicable]

shall, upon receipt of an air raid alarm, immediately seek shelter and remain therein until the all clear signal is given." During the night of July 22, 1942, an air raid alarm was given in the borough where defendant lived; he was notified of the alarm by an air raid warden and directed to extinguish the lights in his place of business and remain indoors. In violation of the rule of the council and contrary to the order of the warden, defendant left the premises and remained in the open where he was found by the warden and conducted back to his place of business. He was later arrested on warrant charged with violation of the Air Raid Precautions Act.

It is the duty of every court to seek out, if possible, a construction which will support the legislative interpretation of the constitution and nothing but a clear violation can nullify an act of assembly on constitutional grounds. *Com. ex rel. Schnader v. Liveright et al.,* 308 Pa. 35, 161 A. 697.

We have quoted enough of the acts in question to indicate the sense of imminent danger in the mind of the legislature and a serious effort to meet an unknown future through a flexible system of protection of persons and property. This State was not alone in enacting such legislation. The danger at the time was real. In the Pacific, following December 7, 1941, Japan's naval and air forces were superior; and in the Atlantic the battle was in the balance. We were unprepared. The danger was from the air and with a turn of events in favor of the Axis powers, Pennsylvania, with its capacity for production of materials and implements of war well might have become a major target. From the vantage ground of the present, the judgment of the air raid warden in arresting this defendant for misconduct during a practice drill may be questioned. But that is beside the point, as is the fact that a remote section in western Pennsylvania may not have

been liable to attack in any event. This case presents the important question whether the State, in time of war, or other serious emergency, may protect its citizens and their property by legislation in the form presented. If the rule of the council was valid it operated on all citizens alike and during practice raids as well as in times of actual attack.

This legislation was enacted under the police power of the State, the "greatest and most powerful attribute of government," a power which under the constitution (Art. XVI, §3) may never be abridged. *Com. v. Widovich,* 295 Pa. 311, 318, 145 A. 295. On rare occasions, under circumstances of extraordinary nature, courts have sustained the exercise of the power though it transcended positive constitutional provisions which stood in its way. The emergency in this case however cannot justify that extraordinary exercise of the power for the means were at hand to formulate legislation entirely within the constitution. *Com. ex rel. Schnader v. Liveright,* supra.

The 1942 Act authorized the Council to make rules, regulations and orders (among others) regarding: "The organization, recruiting, training, maintenance and operation of aircraft warning services" and the like; "the formulation and execution of plans for the carrying out of practice blackouts, air raid drills and warnings and of all precautionary measures under actual conditions of hostile air raids or enemy attack"; "the organization, recruiting, training, conduct and duties and powers of volunteer agencies; the effective screening or extinguishment of all lights and lighting devices and appliances"; and "the conduct of civilians and the movement and cessation of pedestrian and vehicular traffic during attack or drill."

The applicable principle has been thus stated in the often-quoted language of Mr. Justice AGNEW in *Locke's Appeal,* 72 Pa. 491: "Then, the true distinction, I con-

ceive, is this: The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." The opinion in *Holgate Bros. Co. et al. v. Bashore et al.*, 331 Pa. 255, 200 A. 672, refers to cases where definite standards, policies and limitations were set up by the legislature and acts of administrators within the limitations imposed, were held valid. In that opinion Mr. Justice DREW restates the principle: "If the legislature fails, however, to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad its attempt to delegate is a nullity: Schechter Poultry Corp. v. United States, 295 U. S. 495; Panama Refining Co. v. Ryan, supra; O'Neil v. Insurance Co., 166 Pa. 72." The 1942 Act authorized the recruiting of volunteer wardens and the making of rules defining their duties, and in addition, rules as to the conduct of civilians during attack or drill. It was impossible in any act of assembly to foresee the precise form of possible attack by an enemy with a genius for new and effective instruments of aerial warfare or to set forth more than a general standard against such raids. Of necessity the legislature was obliged to delegate some discretion as to the choice of means in protecting persons and property against an unknown future. We have noted that this discretion was lodged not in one man but with a group well qualified to devise adequate means of defense. Cf. *State v. Natelson Bros.*, 21 N. J. Misc. 186, 32 A. 2d 581 where a similar act was sustained. We think it clear that the legislation in question sufficiently establishes standards, policies and limitations on the delegated power and that the rules of the Council comply with those standards. The regulations of the Council therefore were administrative and not legislative. Cf. *Baldwin Township's Annexation*, 305 Pa. 490, 158 A. 272; *Equit. L.*

128

*Soc., Inc. et al. v. Bell et al.,* 339 Pa. 449, 14 A. 2d 316;
*Kellerman v. Philadelphia,* 139 Pa. Superior Ct. 569,
13 A. 2d 84.

Judgment reversed; the record is remitted to the
lower court with directions to enter a finding of guilty
as a matter of law, and for sentence.