Commonwealth *v.* Harrison, Appellant.

Argued November 12, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Maurice Louik,* with him *Harrison & Louik,* for appellant.

*George Shorall,* Assistant City Solicitor, with him *J. Frank McKenna, Jr.,* City Solicitor, for appellee.

OPINION BY RHODES, P. J., March 20, 1957:

These two appeals relate to summary convictions involving the authority of a police officer of the City of Pittsburgh to direct traffic at a congested intersection.

The facts are not in dispute; the issues presented are questions of law. The summary convictions of appellant, David M. Harrison, arose out of two incidents which were essentially identical. The first occurred at the intersection of Sixth Avenue and Smithfield Street, in the City of Pittsburgh, on December 7, 1953, about 9 p.m. Although the traffic signal was operating, a police officer in uniform was stationed at the corner to direct traffic. Appellant drove his automobile down Sixth Avenue toward Wood Street, intending to make a right turn into Smithfield Street. Ordinarily he would have been allowed to make such turn, but due to a congestion of traffic on Smithfield Street the officer directed appellant to continue on Sixth Avenue. Appellant entered into an argument with the officer and insisted on making the right turn. The second incident occurred on December 3, 1954, at the cornor of Oliver Avenue and Grant Street, in the City of Pittsburgh, about 5:30 p.m. Due to the congestion the traffic signal at this intersection was turned off, and traffic was being directed by several police officers in uniform. Appellant was driving up Oliver Avenue toward Grant Street. Traffic at the intersection was heavy and on Grant Street it was "backed clear back

to the cross-walk." An officer in uniform, who was directing traffic manually, ordered appellant to continue straight through on Oliver Avenue, but appellant engaged in an argument with the officer and insisted on making a right turn into Grant Street. Under ordinary conditions he would have been permitted to make the right turn.

The informations in both cases were almost identical; they charged appellant with failure to obey the signals or directions of the officers in violation of section 1218 (d) of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §783 (d). Appellant waived hearings before the magistrate and gave bond for his appearance in the County Court of Allegheny County. At the hearing before Judge LENCHER, the police officers testified to the alleged violations and described the congested traffic conditions existing at the time thereof. Appellant presented no evidence. At the conclusion of the Commonwealth's evidence, appellant moved for directed verdicts on the ground that no violations of section 1218 (d) or of any other sections of The Vehicle Code or city ordinances were established. Judge LENCHER found appellant guilty in each case, and sentenced him to pay the costs, and in default thereof to stand committed to the Allegheny County Jail for the period of one day. Appeals which were taken to this Court were allowed to act as a supersedeas.

Appellant contends (1) that section 1218 (d) of The Vehicle Code, 75 PS §783 (d), does not cover the present situation; (2) that no statute or ordinance specifically precluded a right turn at these intersections; and (3) that to permit the judgment of an individual police officer to supersede the traffic statutes and ordinances is an unlawful delegation of legislative power and thus unconstitutional.

Section 1218 (d) of The Vehicle Code, 75 PS §783 (d), which formed the basis for appellant's convictions, provides: "It shall be unlawful for any operator of a vehicle to refuse to comply with any lawful order, signal, or direction of a peace officer who shall be in uniform and shall exhibit his badge or other sign of authority." Appellant argues that this provision applies only to lawful orders, signals, or directions of officers with respect to matters in section 1218 (a), (b), and (c), 75 PS§783 (a), (b), and (c), and not generally to orders, signals, or directions of police officers under the Code and related ordinances.[1] Subsection (d) was not originally a part of section 1218; it was added by the Act of July 16, 1935, P. L. 1056, §43, 75 PS §783 (d). As appellant construes subsection (d) its addition to the Code in 1935 would have served no purpose, as section 1218 had provided a penalty for failing to comply with the signals or requests of officers under subsections (a), (b), and (c) thereof. Moreover, the language of section 1218 (d) is general, and makes it unlawful to refuse to comply with any lawful order, signal, or direction; it is in no way, specifically or impliedly, limited to signals, orders, or directions in the situations enumerated in section 1218 (a), (b), and (c). The language is clear and free from ambiguity, and we may not disregard or change it by construction. Statutory Construction Act of May 28, 1937,

---

[1] Subsection (a), §1218, 75 PS §783 (a), relates to the stopping of vehicles by peace officers in order to check the registration cards and operators' license cards; subsection (b), §1218, 75 PS §783 (b), relates to the stopping of vehicles by peace officers in order to inspect the vehicle, its equipment, operation and serial numbers; and subsection (c), §1218, 75 PS §783 (c), authorizes peace officers to inspect vehicles, and title registrations thereof, in any public garage or repair shop, or on the premises of any dealer for the purpose of locating stolen vehicles.

P. L. 1019, §51, 46 PS §551; *Com. v. Wolfgang,* 120 Pa. Superior Ct. 252, 255, 182 A. 109.

We think it follows from The Vehicle Code and the Pittsburgh Traffic Code that the officers had authority to direct appellant to proceed straight through the intersections under the conditions of traffic existing at the time of these offenses. Section 1103 (a) of The Vehicle Code, 75 PS §663 (a), authorizes local authorities to enact ordinances, regulating traffic as follows: "Local authorities, except as expressly authorized by this act, shall have no power or authority to alter any speed limitations declared in this act, or to enact or enforce any ordinance, rule or regulation contrary to the provisions of this act, except that local authorities shall have power to provide by ordinance for the regulation of traffic by means of peace officers or official traffic signals on any portion of the highway where traffic is heavy or continuous, and may regulate or prohibit parking, stopping or loading of vehicles, . . . and may regulate the kinds and classes of traffic and its turning on certain highways at all or certain hours, . . ." See *William Laubach & Sons v. Easton,* 347 Pa. 542, 547, 32 A. 2d 881. In section 201 of its traffic code, the City of Pittsburgh has provided for the regulation of traffic by police officers as follows: "It shall be the duty of the police to enforce the provisions of this Ordinance, provided that in the event of a fire or other emergency or to expedite traffic or safeguard pedestrians, officers of the Police and Fire Bureaus may direct traffic, notwithstanding the provisions of this Ordinance." The testimony, as we have indicated, established that the officers directed traffic through the intersections to avoid further congestion of traffic on the streets into which appellant desired to turn. It would be absurd to say that they

were not expediting traffic under such circumstances; appellant and other motorists turning right would have increased the existing congestion, and would have caused further congestion in streets from which the turns were being made.

Appellant argues that the officers could not prevent a right turn at these intersections without an ordinance specifically prohibiting the turns and without the posting of official signs to that effect. Appellant relies on section 1106 of The Vehicle Code, 75 PS §682. That section provides that local ordinances, rules, or regulations are not enforceable unless the local authorities have given notice thereof by conspicuously posting an official sign at the affected portion of the highway. See, also, section 1011 (d) of The Vehicle Code, 75 PS §546 (d); *Roadman v. Bellone,* 379 Pa. 483, 489, 108 A. 2d 754. While it is true that an ordinance making some specific regulation of traffic, such as prohibiting a right turn at all or at designated times, is unenforceable unless the requisite signs are posted, it does not follow that the specific authority of a police officer must be posted on an official sign before he may act to direct traffic in an emergency or to expedite congested traffic. The requirement of signs when an ordinance permanently regulates speed, turns, or parking is obviously to give notice of the prohibitions or limitations to the motorist. See *Com. ex rel. Borough of Dormont v. Pahlman,* 118 Pa. Superior Ct. 175, 179, 179 A. 910. But, as the court below observed, "a policeman in uniform and badged" was the controller of traffic during the emergency created by the congestion on certain streets. Although traffic may ordinarily be controlled by signs or automatic traffic signals, The Vehicle Code recognizes that unusual conditions may require the intervention of a trained officer; and it

is therefore provided in section 1026 (a), 75 PS §635 (a), that, at the direction of a peace officer, a motorist may lawfully disregard the direction of a traffic signal. It may be that the city will ultimately pass an ordinance prohibiting turns at these intersections if congestion is a regular occurrence, but that does not mean that the officers were without authority to expedite traffic under the conditions which existed at the time of these offenses. The powers of police officers appointed by the municipality are derived from the common law and legislative enactments. *Miller v. Hastings Borough*, 25 Pa. Superior Ct. 569, 573. The Commonwealth has recognized in section 1103 of The Vehicle Code, 75 PS §663, that peace or police officers may regulate traffic when the municipality has so indicated by ordinance, as the City of Pittsburgh has done in section 201 of its traffic code.

Appellant's final argument is that the Pittsburgh Traffic Code unlawfully delegates legislative power to the police officers in this instance. The applicable rules are well established. "The legislature constitutionally may refer to a person or body of persons, within limits, set by the terms, purpose, or policy of the enactment, or by recognized scientific findings in various fields, the independent determination of facts upon which the application or enforcement of the law is to depend. . . . But any legislative enactment which vests in a person or body of persons free of any standard independent of his or their own mind and judgment the power of supplying, or giving force to, or suspending its terms falls beyond the limits of judicial approval . . . and is unconstitutional as a delegation of the power reposed exclusively in the legislature." *Kellerman v. Philadelphia*, 139 Pa. Superior Ct. 569, 574, 13 A. 2d 84. See, also, *Com. v. Funk*, 323 Pa. 390, 398, 186 A.

65; *Com. v. Reitz,* 156 Pa. Superior Ct. 122, 127, 39 A. 2d 522. In the *Kellerman* case this Court held unconstitutional an ordinance which fixed the hours of business of barber shops generally, but provided that the Director of Public Health of the City of Philadelphia could permit any shop to remain open at other hours if in his "opinion" such exception was a "public necessity." The Director of Public Health was there given complete and unfettered discretion in the matter. The ordinance in the present case permits the officers to direct traffic only "in the event of a fire or other emergency or to expedite traffic or safeguard pedestrians." Appellant admits that the power to direct traffic in an emergency, as that term is ordinarily understood, is not an unlawful delegation. We are of the opinion that the standard "to expedite traffic" also sets forth sufficient limits upon the exercise of the officer's power, and that it is in accord with the purpose and policy of the enactment. Under this standard the officer does not have unfettered discretion. His authority is solely to determine as a factual matter whether the flow of traffic is being delayed, for instance, by congestion; whereupon he is warranted in taking proper steps to expedite the traffic. The standard is necessarily broad, but it is sufficient. It is similar in this respect to a number of cases. In *Com. v. Reitz,* supra, 156 Pa. Superior Ct. 122, 127, 39 A. 2d 522, the State Council of Defense was authorized to take such precautionary measures as might be necessary for the safety and defense of the civilian population and property in the event of air raids, and to make and enforce rules and regulations for this purpose. We held that this was not an unlawful delegation, and said (page 127 of 156 Pa. Superior Ct., page 524 of 39 A. 2d) : "It was impossible in any act of assembly to

foresee the precise form of possible attack by an enemy with a genius for new and effective instruments of aerial warfare or to set forth more than a general standard against such raids. Of necessity the legislature was obliged to delegate some discretion as to the choice of means . . ." In *American Baseball Club of Philadelphia v. Philadelphia*, 312 Pa. 311, 316-318, 167 A. 891, our Supreme Court held that the vesting of power in the Director of Public Safety to determine the number of policemen necessary to protect "public safety" at baseball games was not an unlawful delegation of legislative power, and pointed out (page 317 of 312 Pa., page 893 of 167 A.) that "From the very nature of the special services rendered no better or more definite standard could be fixed by council."

The Pittsburgh Traffic Code could not possibly anticipate every situation which would require the expedition of traffic any more than it could describe every "emergency" situation which would require a trained officer to intervene. The exact orders necessary to direct the movement of traffic and to remedy the situation at any given time and place are no more predictable in the one case than in the other. The words "to expedite traffic," given their common and ordinary meaning (Statutory Construction Act, §33, 46 PS §533; *Watson Appeal*, 377 Pa. 495, 497, 105 A. 2d 576), sufficiently remove the action of the officer in accordance therewith from the realm of complete and unrestricted discretion. Notwithstanding the fact that criminal liability may be imposed for the refusal to obey a lawful order, thereunder, the general language of this ordinance in this respect does not render it unconstitutional, as the standard is one which may easily be understood by the average person. *Com. v. Klick,* 164 Pa. Superior Ct. 449, 453, 65 A. 2d 440. Moreover, an ac-

cused motorist may have the facts determined by a court (section 1204 of The Vehicle Code, 75 PS §734), and, if it appears that the officer exceeded his authority by acting unreasonably or arbitrarily, there will be no liability imposed upon the motorist. See *American Baseball Club of Philadelphia v. Philadelphia,* supra, 312 Pa. 311, 317, 167 A. 891.[2]

Appellant's license to operate a motor vehicle upon the streets and highways is a privilege, not a property right. *Com. v. Funk,* supra, 323 Pa. 390, 396, 186 A. 65. Having accepted that privilege, appellant subjected himself to the reasonable regulation by the Commonwealth, or its municipal subdivisions, as to the manner of using the highways. *Breinig v. Allegheny County,* 332 Pa. 474, 482, 2 A. 2d 842. By section 1103 of The Vehicle Code, 75 PS §663, the Commonwealth has authorized municipalities to regulate traffic within their jurisdiction, and one of the means specifically

---

[2] See, also, *Chicago v. Marriotto,* 332 Ill. 44, 163 N. E. 369, 60 A.L.R. 501, where an ordinance, similar to the Pittsburgh Traffic Code, provided (page 369 of 163 N.E.) that police officers could direct traffic in accordance with its provisions, " 'or in emergencies as public safety or convenience may require, and it shall be unlawful for any person to fail or refuse to comply with any lawful order, signal or direction of a police officer.' " In upholding the action of an officer in prohibiting a right turn where traffic to the right filled the street, the Supreme Court of Illinois said (page 370 of 163 N.E.) : "There is no occasion contemplated when an officer may arbitrarily direct traffic under the provisions of the ordinance. The only discretion left to a traffic officer, and seemingly contemplated by the ordinance, is in case of emergencies, and on those occasions traffic is not to be handled arbitrarily but as public safety or convenience requires. The ordinance further contemplates a lawful order, signal, or direction to be given by a traffic officer before there is any liability on the part of any person for noncompliance therewith. Hence, in any case, if a lawful or reasonable discretion is not exercised by such traffic officer, a court may ultimately decide such question."

permitted is the use of peace or police officers. The City of Pittsburgh, in utilizing that means in section 201 of its traffic code, has acted within the limits prescribed by law. As we have said, the standard which defines the authority of the officers in these situations is a broad one, but it does not permit the exercise of unbounded or unfettered discretion. It is a reasonable regulation, and, under the facts of these cases, it has been reasonably exercised.

Judgments of sentence are affirmed, and the record is remitted to the court below, and it is ordered that defendant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with the sentences, or any parts thereof which have not been performed at the time each appeal was made a supersedeas.