Opinion by
 

 Hoppman, J.,
 

 This is an appeal from appellant’s conviction for transferring a narcotic drug, a violation of The Drug, Device and Cosmetic Act, 35 P.S. §780-1 et seq. Appellant contends that (1) The Drug Device and Cosmetic Act is an unconstitutional delegation of the legislative power of the General Assembly of the Commonwealth of Pennsylvania, (2) The Drug, Device and Cosmetic Act is unconstitutionally vague, and (3) the evidentiary chain of custody of the methadone allegedly transferred by appellant was not proven.
 

 I
 

 Appellant first argues that The Drug, Device and Cosmetic Act contains an unconstitutional delegation of legislative power. This contention cannot be sus
 
 *239
 
 tained. The law with respect to unconstitutional delegation has been stated in
 
 Locke’s Appeal,
 
 72 Pa. 491 (1873) : “The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to malee, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.”
 

 Where the legislature has delegated fact-finding power to administrative officers, boards, and commissions, that power will be valid only if limited by sufficiently ascertainable and definite standards, policies, and limitations to which such officers, boards, and commissions must strictly adhere. If the legislature fails to prescribe with reasonable clarity the limits of the power delegated, or if those limits are too broad, its attempt to delegate will be a nullity.
 
 Holgate Bros. Co. v. Bashore,
 
 331 Pa. 255, 200 A. 672 (1938).
 

 At the time of appellant’s arrest and conviction, the term “narcotic drug” was defined in The Drug, Device and Cosmetic Act to be, among other things, “(5) any drug or other substance found by the United States Secretary of the Treasury or his delegate, and proclaimed by him or his delegate after due notice and opportunity for public hearing, to have an addiction-forming or addiction-sustaining liability similar to morphine or cocaine.”
 
 [1]
 
 35 P.S. §780-2 (g).
 

 
 *240
 

 The
 
 prosecution of appellant for the transfer of methadone was predicated upon this section of The Drug, Device and . Cosmetic Act. The question, then, is whether (1) the classification of a substance as a narcotic drug is a fact-finding procedure, and (2) the standards set forth in the Act are sufficiently clear and definite. It is apparent and undisputed that the classification of narcotic drugs is a fact-finding procedure, but appellant urges us to find that the standards set forth in the Act are constitutionally insufficient.
 

 The Pennsylvania Legislature, to limit the discretion of the Secretary of the Treasury, established the following standard for the classification of certain substances as narcotic drugs: “The term ‘narcotic drug’ means . . . any . . . substance . . . found ... to have an addiction-forming or addiction-sustaining liability similar to morphine or cocaine.” This standard is sufficiently clear and definite to permit the determination by the Secretary of the Treasury of those substances intended by the legislature to be classified as narcotic drugs. The Secretary’s discretion is limited to substances possessing a certain property (“addiction-forming or addiction-sustaining”) . to a certain degree (“similar to morphine or cocaine”). Furthermore, the Secretary is subject to procedural restrictions, having the power to classify substances as narcotic drugs only after “due notice and opportunity for public hearing.” The discretion of the Secretary of the Treasury is additionally limited by the reservation of a power of exemption in the Secretary of Health of the Common
 
 *241
 
 wealth of Pennsylvania. 35 P.S. §780-2, 780-3.
 
 [2]
 
 See
 
 Nester Appeal,
 
 187 Pa. Superior Ct. 313, 144 A. 2d 623 (1958);
 
 Commonwealth v. Harrison,
 
 183 Pa. Superior Ct. 133, 130 A. 2d 198 (1957); and
 
 Commonwealth v. Paschall,
 
 46 Pa. D. & C. 243 (1942);
 
 cf. Holgate Bros. Co. v. Bashore,
 
 supra at 263-264.
 

 For the above reasons we hold that the standards set forth in The Drug, Device and Cosmetic Act of 1961 are constitutionally sufficient, and that the delegation of authority by the legislature to the Secretary of the Treasury is valid.
 

 II
 

 Appellant’s second contention is that The Drug, Device and Cosmetic Act of 1961 is unconstitutionally vague in that the Act relies on the decisions of a federal officer to define its scope and application. A criminal statute will be void for vagueness where it “either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . .”
 
 Connally v. General Construction Co.,
 
 269 U.S. 385, 391 (1926).
 

 The Drug, Device and Cosmetic Act provides in relevant part that the following acts are prohibited: “The possession, control, dealing in, dispensing, selling, delivery, distribution, prescription, trafficking in, or giving of, any dangerous or narcotic drug.” 35 P.S. §780-4 (q). As stated above, the standards established by the Act are constitutionally sufficient to guide the
 
 *242
 
 Secretary of the Treasury’s determination of those substances classified as narcotic drugs. Appellant does not and cannot contend that he has been denied fair warning that his actions were in violation of the criminal law. It is apparent, therefore, that the statute is neither vague nor uncertain.
 

 Ill
 

 Appellant’s final argument is that the chain of custody of the methadone was not proven by the Commonwealth. The methadone which is the subject of this contention was found on the person of appellant’s friend, Hovrard Triggs, who testified as a witness for the Commonwealth. The trial judge, however, instructed the jury that they could find appellant guilty on the charge of transferring a narcotic drug only if they believed that appellant had transferred methadone to a third individual, Garret McGucMn. There was no evidence that the methadone found on Triggs was that transferred to McGucMn. The evidence of the independent transfer of methadone to McGucMn was sufficient for the jury to have found appellant guilty. We believe, therefore, that even if the chain of custody had been broken, which is doubtful, the admission into evidence of the methadone alleged to have been found on Triggs was at most harmless error.
 

 For the above reasons, the judgment of sentence is affirmed.
 

 [1]
 

 The Drug, Device and Cosmetic Act has since been repealed and replaced by The Controlled Substance, Drug, Device and Cosmetic Act of 1972. The new Act does not delegate to the United States Secretary of the Treasury the power to determine those substances to be classified as narcotic drugs.
 

 
 *240
 
 It should be noted, however, that under The Drug, Device and Cosmetic Act of 1961, the Secretary of the Treasury’s designation of a substance as a narcotic drug could be overturned by the Secretary of Health of the Commonwealth of Pennsylvania “after consultation and upon the recommendation of the [Pennsylvania Drug, Device and Cosmetic Board].”
 

 [2]
 

 The Controlled Substance, Drug, Device and Cosmetic Act of 1972, which replaces The Drug, Device and Cosmetic Act under which appellant was convicted, contains a much more restricted standard for the determination of “narcotic drugs” than the earlier statute. This, however, is not relevant to a consideration of the sufficiency of the standards contained within that earlier statute.